Sharon Lynn STORM, f/k/a Sharon Lynn Mullins, Appellant,

v.

Jerry MULLINS; Lorraine Mullins; A.R.M., A Minor; and B.L.M., A Minor Appellees

No. 2006–SC–000008–DG.

Supreme Court of Kentucky.

Aug. 24, 2006.

As Modified Aug. 25, 2006.

Stephen L. Hogg, Stratton, Hogg & Maddox, P.S.C., Pikeville, Counsel for Appellant.

Jimmy C. Webb, Stumbo and Webb Law Office, Prestonsburg, Counsel for Appellees, Jerry Mullins and Lorraine Mullins.

John T. Chafin, Chafin and Davis, Prestonsburg, Counsel for Appellees, A.R.M., A Minor and B.L.M., A Minor.

Opinion of the Court by Justice ROACH.

## I. INTRODUCTION

This is an appeal of a decision by the Floyd Circuit Court, Family Court Division, denying a CR 60.02 motion to set aside a judgment of adoption. Appellant, Sharon Lynn Storm (f/k/a Sharon Lynn Mullins), is the natural mother of two minor children, B.L.M. and A.R.M. Appellees, Jerry and Lorraine Mullins, are the paternal grandparents, and adoptive parents, of the two children. Appellant challenged the adoptions, arguing that defects in the original proceedings were such that the adoptions were invalid. The trial court denied Appellant's request, relying on KRS 199.540(2), which bars any direct or collateral attack on adoptions after one year, and the Court of Appeals affirmed that decision. Having granted Appellant's motion for discretionary review, we now reverse the decision of the Court of Appeals and remand the case to the Floyd Circuit Court, Family Court Division for additional factfinding.

## II. BACKGROUND

Appellant and her former husband, Preston Mullins, are the natural parents of B.L.M. and A.R.M., who were born on January 11, 1999 and December 25, 2000, respectively. Although both children were born during their parents' marriage, they have been raised primarily by their paternal grandparents, Appellees Jerry and Lorraine Mullins. B.L.M. has lived with her grandparents since her birth; A.R.M. lived with them sporadically until her first birthday, after which she lived with them on a permanent basis.

This custodial arrangement was not challenged by Appellant until the commencement of this action. In fact, Appellant acknowledges in her brief that she and her former husband "agreed that [Appellees] should have custody of the children and both signed a 'consent to custody,'" authorizing Appellees as the primary custodians of B.L.M. and A.R.M. Appellant's consent to custody was executed on March 27, 2002 and stated:

> Sharon Lynn Mullins, states that she is the Respondent in the above styled and number [sic] action; that she has read a copy of the Petition for Custody filed herein by the Petitioner in said action and hereby enters her appearance to said action for all intents and purposes and declines to plead further and hereby waives all future proceedings herein or notices or hearings that might be necessary or incidental to this action.

> The Respondent further states that she is the natural mother of said child [sic], [A.R.M.] and [B.L.M.], and consents to custody being placed with the Petitioner as placement with the Petitioner would be in the best interests of the minor children.

Appellees assert that Appellant was given a copy of the petition for adoption when she signed the consent to custody.[1]

---

1. As was noted by the Court of Appeals, there is little evidence in the record to support Appellees' assertion. However, Appellant's Consent to Custody does state that "she has read the Petition for Custody filed herein by [Appellees] ...." While a Petition for Custody was never filed in this case, this passage may refer to Appellees' Petition for Adoption, which was filed with the family court less than two months after Appellant signed the consent form. Likewise, both the Petition for Adoption and Appellant's Consent to Custody contain identical headers which designate the

Appellant maintains that she neither intended, nor understood, that her consent to custody would operate as a consent to adoption. She also maintains that she was never provided a copy of the adoption petition.

Despite Appellant's characterization of her consent to custody, the execution of that document, along with the execution of its counterpart by her former husband, was the first in a series of actions which culminated in Appellees' adoption of the two girls. On May 17, 2002, Appellees filed a Petition for Adoption in the Floyd County Family Court, seeking to adopt B.L.M. and A.R.M. Attached to the petition were the consent to custody documents signed by both Appellant and her former husband. Although Appellant was designated as a Respondent in the Petition for Adoption, nothing in the record indicates that she was ever served with a copy of the petition. After the adoption petition was filed, the family court appointed a guardian ad litem (GAL) to work on behalf of the children during the adoption proceedings. On June 6, 2002, the GAL filed a report that noted, among other things, it would be in the best interest of the children for Appellees' adoption petition to be granted. The GAL's report did not include any reference to Appellant or her former husband. A brief, three-minute hearing on the matter was held on June 20, 2002. Although no videotape or transcript of this hearing was certified as part of the record on appeal, the family court's videotape recording log indicates that Appellees' attorney was present. However, the log does not indicate whether Appellant, her counsel, or any other representative attended the hearing.

On June 21, 2002, the Kentucky Cabinet for Families and Children filed a report with the family court concerning the adoption petition. The report, which provided background information about the parties, was based primarily on information obtained during a social worker's interview of Appellees and the two girls, B.L.M., and A.R.M. Significantly, a letter accompanying the report noted that "the petition states that both parents have consented to this adoption[;] however, there were no Affidavits of Consent attached to the petition. The birth mother and birth father have completed the DSS–191 and DSS–192; pages four and six of the DSS–191 and the DSS–192 are attached to this report." The report concluded with a recommendation "that the adoption be granted provided all legal requirements [had] been met...."

The DSS–191 form is titled "INFORMATION TO BE OBTAINED FROM PLACING PARENTS." The form itself indicates that it is "designed to gather health history, genetic and social background information from birth parents which will be helpful to adoptive parents in parenting the child." Pages four and six of the form, copies of which are typically provided to the court and to the adoptive parents, were attached to the Cabinet's report. These pages provide details from the birth parent's medical history, including background information regarding the pregnancy. Although the relevant pages from the DSS–191 were unsigned and did not contain a space for a signature, the Cabinet noted that the forms were provided by both Appellant and her former husband. Appellant has not denied that she completed the form.

The DSS–192 form, which was also attached to the Cabinet's report, is titled "Biological Parent Statement Regarding Future Contact and/or Inspection of Records." The form allows a biological parent

documents for filing in "Floyd Circuit Court, C.A. No. 02–AD–___, Division No. III"

to consent to future contact with the children who are being given up for adoption and to their inspection of the adoption records. The form expressly mentions adoption and includes unequivocal language indicating that it has a limited purpose:

KRS 199.572 requires that the Cabinet for Families and Children ask biological parents who are releasing a child for adoption about the following items and file a copy of the response with the court where the adoption will become final. *Please note this is not a consent to the adoption.*

(Emphasis in original). Appellant executed the DSS–192 on June 13, 2002. The form was not witnessed by a Cabinet representative, though it contains signature blanks for this express purpose. As with the DSS–191, Appellant has not denied completing the form.

The family court entered a judgment of adoption on July 1, 2002. In the judgment, the court specifically found that the facts stated in the Petition were true, that all statutory requirements for adoption had been met, that Appellees were of good moral character, that Appellees were able to properly maintain and educate the children, that the best interests of the children would be promoted by the adoption, and that the children were suitable for adoption. The court ordered that from the date of the filing of the adoption petition B.L.M. and A.R.M. were deemed Appellees' children for all legal purposes and that their legal relationship as children of their natural mother and father was severed. A copy of the judgment was never served on Appellant.

On December 14, 2004, approximately 2½ years after the entry of the judgment of adoption, Appellant filed a petition in the Floyd Family Court to review the record of the adoption proceedings. Her request

was granted, and shortly thereafter, on January 13, 2005, she filed a motion pursuant to CR 60.02 to set aside the judgment of adoption and to grant her custody of B.L.M. and A.R.M. In the motion, Appellant argued that because she had never consented to the adoption, the judgment was void. Appellees filed a response to Appellant's motion on January 14, 2005, arguing that Appellant's failure to visit the children or provide any financial support for them was adequate grounds to reopen the case and convert it to an involuntary adoption proceeding. Appellees argued in the alternative that even if the judgment of adoption was invalid, they should nevertheless be granted custody as the de facto custodians of the children and would therefore be entitled to child support from Appellant. In a later memorandum, Appellees argued that Appellant's challenge was barred by KRS 199.540(2), which provides that a judgment of adoption may not be attacked after one year. Appellant responded that KRS 199.540(2) should not apply because the adoption was void because she had neither consented to it nor was there any evidence that she had been given proper notice of the proceedings.

On March 9, 2005, the trial court denied Appellant's motion, relying exclusively on KRS 199.540(2). In its order the trial court cited the notice and waiver provisions of Appellant's consent to custody, presumably in response to Appellant's claims that she had not been afforded proper notice of the earlier adoption proceedings.

Appellant filed a timely notice of appeal with the trial court and the Court of Appeals sua sponte ordered the case expedited. Although a majority of the Court of Appeals panel assigned to the case ultimately affirmed the decision of the trial court, it was careful to catalog several deficiencies in the original adoption pro-

ceedings, particularly the failure to comply with the statutory requirements regarding consent of the natural parents. Appellant filed a motion for discretionary review, which we granted in March 2006.

## III. ANALYSIS

Appellant's basic claim is that the judgment of adoption was void *ab initio* because the procedural requirements for an adoption, specifically the requirements of consent and notice, were not followed in this case. Appellant further argues that since the judgment of adoption was never valid, KRS 199.540(2) cannot operate to bar her present challenge. While we agree that the consent requirement was not met, we disagree that this deficiency bars the application of KRS 199.540(2). However, we are more concerned about the issue of notice, which has due process implications. We address that issue separately.

### A. Consent to the Adoption

█ We begin by examining whether the basic statutory requirements for an adoption were met in this case. Those requirements, particularly the provisions requiring consent of the natural parents, are set forth in KRS Chapter 199 and provide important context for our decision. KRS 199.500(1) states that "[a]n adoption shall not be granted without the voluntary and informed consent, as defined in KRS 199.011, of the living parent or parents of a child born in lawful wedlock ...."[2] KRS 199.490 directs that "[a]ny consent to adoption shall be filed prior to the entry of the adoption judgment." The phrase "voluntary and informed consent" in the adoption statute

> means that ... the consenting person was fully informed of the legal effect of the consent, that the consenting person was not given or promised anything of value except those expenses allowable under KRS 199.590(6), that the consenting person was not coerced in any way to execute the consent, and that the consent was voluntarily and knowingly given.

KRS 199.011(14). The consent must be in writing, be signed, and include nine specific pieces of information.[3]

2. Although the statute provides certain exceptions to the requirement that a parent provide consent to the adoption, none of those were applicable in this case.

3. While the specific content requirements are not at issue in this case, for the sake of completeness, we note that the statute states:

> The consent shall be in writing, signed and sworn to by the consenting person and include the following:
> (a) Date, time, and place of the execution of the consent;
> (b) Name of the child, if any, to be adopted and the date and place of the child's birth;
> (c) Consenting person's relationship to the child;
> (d) Identity of the proposed adoptive parents or a statement that the consenting person does not desire to know the identification of the proposed adoptive parents;

(e) A statement that the consenting person understands that the consent will be final and irrevocable under this paragraph unless withdrawn under this paragraph.
> 1. If placement approval by the secretary is required, the voluntary and informed consent shall become final and irrevocable twenty (20) days after the later of the placement approval or the execution of the voluntary and informed consent. This consent may be withdrawn only by written notification sent to the proposed adoptive parent or the attorney for the proposed adoptive parent on or before the twentieth day by certified or registered mail and also by first class mail.
> 2. If placement approval by the secretary is not required, the voluntary and informed consent shall become final and irrevocable twenty (20) days after the execution of the voluntary and informed con-

The item in the record most closely resembling a consent to adoption is the consent to custody form that Appellant signed. That form, however, never mentions adoption and does not include the information required by KRS 199.011(14). As such, the consent form simply is not sufficient under the statute as proof of Appellant's consent to the adoption. Like the Court of Appeals, we must acknowledge that the failure to appropriately document Appellant's consent to the adoption was a flaw in the original adoption proceeding and it cannot be explained by reference to the record.

■ Despite irregularities in the adoption proceedings, such judgments are not ordinarily subject to review after one year under Kentucky law. KRS 199.540(2) provides a one year statute of limitation for a challenge to an adoption, regardless of the basis for the challenge:

> After the expiration of one (1) year from the date of the entry of judgment of adoption, the validity thereof shall not be subject to attack in any action, collateral or direct, by reason of any irregularity or failure to comply with KRS 199.470 to 199.520, either procedurally or substantively.

This prohibition ensures the finality of adoption judgments, thereby minimizing the potential for traumatic changes in the lives of adoptive parents and children long after their relationship has been formalized.

That being said, Kentucky case law contemplates the possibility that the limitation statute is not absolute. We have indicated that there may be one exception: when the adoption is alleged to have been obtained through fraud. *See Jones v. Sutton,* 255 S.W.2d 658, 659 (Ky.1953) ("Appellees contend that appellants are estopped to contest the validity of the adoption judgment, and rely in part upon KRS 199.540 which fixes a limitation period of two years within which to attack a judgment of adoption for 'irregularity in procedures'. *Without deciding the question,* we are inclined to the view that if a forgery constitutes a fraud upon the court, the judgment might be adjudged void without regard to statutory limitations based upon 'irregularity'. We will, therefore, assume appellants have the right in this proceeding to question the judgment's validity." (emphasis added)). Although the Court suggested that proof of fraud might allow a petitioner to avoid the limitation imposed by the statute, it expressly declined to decide the issue. Moreover, Appellant has never alleged that the adoption of B.L.M. and A.R.M. was the product of fraud or the like. As such, we need not rule on whether fraud is sufficient to avoid the limiting effect of KRS 199.540(2).

Instead, Appellant has argued that the failure to strictly comply with the statutory and procedural safeguards renders the

---

sent. This consent may be withdrawn only by written notification sent to the proposed adoptive parent or the attorney for the proposed adoptive parent on or before the twentieth day by certified or registered mail and also by first class mail;

(f) Disposition of the child if the adoption is not adjudged;

(g) A statement that the consenting person has received a completed and signed copy of the consent at the time of the execution of the consent;

(h) Name and address of the person who prepared the consent, name and address of the person who reviewed and explained the consent to the consenting person, and a verified statement from the consenting person that the consent has been reviewed with and fully explained to the consenting person; and

(i) Total amount of the consenting person's legal fees, if any, for any purpose related to the execution of the consent and the source of payment of the legal fees.

KRS 199.011(14).

judgment of adoption void. We have never allowed an exception to the limitation period merely for a failure to follow the procedural requirements. Indeed KRS 199.540(2) specifically bars a challenge based on failure to comply with the procedures contained in the adoption statutes. We decline to create another exception, especially one that flatly contradicts the language of the limitation statute. To conclude otherwise would amount to a substantial and unjustifiable departure from the principle underlying KRS 199.540(2), namely, the expectation of finality associated with a judgment of adoption.

We hold that because Appellant failed to challenge the adoption during the year immediately following entry of the judgment, her challenge based on the failure to comply with the statutory adoption procedures is barred by KRS 199.540(2).

### B. Due Process

■ The application of KRS 199.540(2), however, does not dispose of the entire matter because Appellant has also argued that she was not afforded adequate notice of the adoption proceedings, a claim which implicates the Due Process Clause of the Fourteenth Amendment.[4] If her claim is correct, strict application of KRS 199.540(2) in this case could violate her right to due process.[5]

The United States Supreme Court has repeatedly held that the parental rights at stake in adoption proceedings are the sort of fundamental liberty interest protected by the Due Process Clause. *See Lehr v. Robertson,* 463 U.S. 248, 257–58, 103 S.Ct. 2985, 2991–92, 77 L.Ed.2d 614 (1983); *Caban v. Mohammed,* 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979); *Stanley v.*

*Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). Quite simply, if Appellant can show that she was denied due process in the adoption proceedings, then the judgment of adoption must be set aside.

■ Whether Appellant was afforded due process is a complicated matter. Ordinarily, notice and an opportunity to be heard are the basic requirements of due process. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950) ("Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case."). Accordingly, if Appellant received notice of the 2002 adoption proceedings, yet failed to appear or raise any objection, then she waived any due process claim and KRS 199.540(2) would prohibit any challenge to the adoption based on lack of compliance with the statutory procedures discussed above. Given the facts in this case, due process may also have been satisfied if Appellant knew about and cooperated with Appellees in their efforts to adopt the children.

Unfortunately, we cannot discern from the record whether due process was satisfied in this case. The parties disagree pointedly about the nature of Appellant's involvement in the original adoption proceedings, not only as to whether she actually consented to the adoption of B.L.M. and A.R.M., but whether she was even aware of and understood that Appellees intended to adopt the two girls.

---

4. Appellant has proceeded in the lower courts under CR 60.02. Though it is not an issue in this case, we note that CR 60.02(f) is an appropriate vehicle for a due process claim in this type of case.

5. Appellant has not alleged, nor do we even suggest, that the statute is facially unconstitutional.

At least one piece of evidence, the consent to custody, suggests that Appellant was not informed that her ex-husband's parents intended to adopt the children. This document never mentions adoption, yet it precipitated the adoption proceedings in this case. On the other hand, there is ample evidence in the record that Appellant knowingly participated in Appellees' attempts to adopt the children. For example, the DSS–192 form that Appellant signed specifically mentions adoption, and the purpose of that document is to record whether a child placed for adoption will, upon reaching adulthood, be allowed to contact a biological parent and/or inspect adoption records. Likewise, the DSS–191 form, which Appellant also completed, discusses adoption and is designed to provide adoptive parents with a comprehensive health history of the "placing parent."[6]

Because the record does not establish conclusively whether the requirements of due process were met, this matter must be remanded to the trial court to hear evidence and make findings of fact. We also note that the parties have neither briefed nor argued the specific requirements of due process and their application to the facts of this case. As such, we decline to decide that issue at this time.

The decision of the Court of Appeals is reversed and the case is remanded to the Floyd Circuit Court for further proceedings to determine whether the facts are such that due process requires the judgment of adoption be set aside.

All concur.

---

6. We also note that Appellees claim Appellant was given a copy of the adoption petition when she signed the consent to custody form, though, as noted above, there is little evidence currently in the record to support this assertion.