Lloyd BENSON, Appellant,

v.

Rose BENSON, Appellee.

Court of Appeals of Kentucky.

June 1, 1956.

L. C. Lawrence, Jamestown, for appellant.

Moore & Pittman, Liberty, for appellee.

STEWART, Judge.

Appellant, Lloyd Benson, obtained a judgment of divorce from appellee, Rose Benson, in the Casey Circuit Court on February 7, 1947. The latter was awarded the custody of their children, Carol Delane Benson, now 14, and David Wayne Benson, now 11, and the father was ordered to pay $25 per month to the mother for the support of the children.

On February 3, 1954, appellee filed a motion in the Casey Circuit Court whereby she sought to redocket the action and to have the judgment modified by increasing the allowance from $25 to $50 per month for the maintenance of the children. She filed therewith a notice directed to appellant in which she informed him she would ask for the additional sum in open court on that date. The certificate of her attorney subscribed on the notice stated he had on the 13th day of January, 1954, mailed a copy of the same to appellant at 1539 Pinehurst, Detroit, 21, Michigan, his last known address, informing him the date the motion would be entered. On February 3, 1954, pursuant to the notice, a hearing was held, the motion to augment the allowance to $50 per month was sustained and a modified order was entered to this effect.

Appellant did not appear at the hearing and subsequently failed to comply with the terms of the modified order. Under date of June 21, 1954, he filed his motion to vacate this order on the ground that it was void because no notice of the hearing at which the additional award had been adjudged was ever received by him; and he also averred he had obtained no knowledge of the court proceeding until long after the entry of the new order at the February term, 1954. He further alleged in this plea appellee had, since she had been awarded care of the children, shown herself unfit to retain the custody of them.

On July 22, 1954, appellee moved that a rule issue against appellant to appear in court on July 26, 1954, and show cause why he should not be held in contempt and be punished for his failure to make payments in conformity with the modified order. Notice of this motion and a copy thereof were mailed to appellant's attorney of record in this proceeding on the same date.

On the date last mentioned, the chancellor ruled that service of the initial notice on appellant was complete upon placing the notice in the United States mail. The chancellor next decreed appellant must pay up the accumulated arrearage before the court would pass on his motion to vacate the order granting the increased award and on his request to change the custody of the children over to him. Appellant then made these payments. Thereafter, upon hearing the evidence, the court declined to set aside the order enlarging the maintenance allowance and overruled the motion to bestow upon appellant the custody of the two children. He appeals from the orders entered.

KRS 403.070 provides that in a divorce action where the custody and maintenance of infant children are involved, the court, before rendering the decree of divorce or on final judgment, "may make orders for the care, custody and maintenance of the minor children of the parties"; and we also quote this language from that section: "At any time afterward, upon the petition of either parent, the court may revise any of its orders as to the children, having principally in view in all such cases the interest and welfare of the children." Thus, the jurisdiction of the lower court was a continuing one in this case.

[2] At any future time during the lives of the parents and the minority of the chil-

dren, upon good cause shown, the case at bar could be redocketed upon notice for the purpose of modifying the judgment as to the custody of the children and any allowances for their benefit. Appellant insists, however, the lower court had no jurisdiction over him in the instant proceedings because he never received notice of the hearing at which he was adjudged to pay the additional monthly sum. He also maintains that a party to an action wherein a motion was made, a hearing had and a new order entered for an increase in the maintenance payments to his children has the right to prove he never received notice of the motion and the hearing and, upon such a showing, any order of the court entered pursuant thereto is void.

CR 5.02 governs the manner of giving a legal notice and it provides, so far as it relates to the facts of this case, that service of such notice upon a party "shall be made by delivering a copy to him or by mailing it to him at his last known address or, if no address is known, by leaving it with the clerk of the court." This Rule concludes with this statement: "Service by mail is complete upon mailing."

Although CR 5.02 has not been construed since the Rules of Civil Procedure were adopted on July 1, 1953, a case directly in point on the issue raised is Mrs. W. R. Klappert Moving & Storage Warehouse v. Muehlenkamp, 256 Ky. 506, 76 S.W.2d 597, 598. That case involved the right of a warehouseman to sell furniture for storage charges, and the statute (Ky.St. Sec. 4778) required that " 'the warehouseman, at least ten days before the day of sale, shall mail to the owner a notice of the time and place of sale, with a description of the articles to be sold and the amount of charges.' " The owner attacked the sale on the ground that actual notice had not been received.

The opinion held, where notice by mail is authorized under a statute and the statute was duly complied with in respect to posting the notice, the validity of the service was not affected by a failure to receive the notice. This statement was made on that point: "The statute in question does not require the warehouseman to notify the owner of the time and place of sale, but merely requires the warehouseman to mail to the owner a notice of the time and place of sale. This statute must not be confused with those requiring actual notice. Where actual notice is required, it is incumbent upon the party whose duty it is to give such notice to see that such notice is actually received by the party entitled to such notice. * * * All this statute contemplates is that the warehouseman shall mail such notice, and that, if such notice was mailed, the statute was complied with, and it is immaterial whether or not appellees received the notice."

In Hurley v. Olcott, 198 N.Y. 132, 91 N.E. 270, 28 L.R.A.,N.S., 238, the statute in controversy reads: " 'The notice may be served by post by letter addressed to the person on whom it is to be served, at his last known place of residence or place of business and if served by post shall be deemed to have been served at the time when the letter containing the same would be delivered in the ordinary course of the post.' " Plaintiffs claimed service was duly made by mail, but receipt of the notice was denied by defendants. The trial court charged the jury if they found that the notice was written and mailed, "it was sufficient, whether defendants received it or not." This instruction was excepted to, defendants maintaining it should have been left to the jury to decide whether in fact defendants received the notice and if they found defendants failed to receive it, the jury could have then found the service insufficient.

That case rejected the contention of defendants and held that the service was effective when the papers were properly mailed to defendants, regardless of their receipt by the adverse parties, the opinion advancing this reasoning: "The law may prescribe other than personal service even of original process by which it is sought to bring a party into court and bind him by its judgment. In Matter of Empire City Bank (United States Trust Co. v. United States F. Ins. Co.), 18 N.Y. 199, 215, it was held that personal service is not required to constitute due process of law, and that the

Legislature may prescribe 'a kind of notice by which it is reasonably probable that the party proceeded against will be apprised of what is going on against him.' In that case the notice was by advertisement in a newspaper."

With respect to the federal holding on the efficacy of the service where the notice was not received, this statement appears in 2 Moore, Supplement to Vol. 2, p. 81: "Non-receipt of the paper does not affect the validity of the service." The federal decisions generally seem to adhere to this principle. In O'Neill v. Blue Comet Cab Corp., D.C., 116 F.Supp. 54, plaintiff moved to strike the answer of defendant because of his failure to appear for oral examination pursuant to a mailed notice. The motion was opposed on the ground that the notice was not received. It was decided that the service was complete upon proof of due posting, and because of defendant's failure to apply for appropriate relief in time, his defense was held insufficient. In Timmons v. United States, 4 Cir., 194 F.2d 357, judgment was asked by plaintiff on the ground that defendant had admitted certain important facts by failure to answer a request for admission. Defendant contended there was no proof that the request for admission had been *actually* served upon her. The court pointed out that while the provisions of Fed.Rules Civ.Proc. rule 5, 28 U.S.C.A. with respect to service by mail must be strictly met, the showing of compliance therewith was established. Therefore, the service was complete and constituted a proper basis for the judgment against defendant.

■ We must hold the service was valid, since CR 5.02 was complied with in respect to duly posting the notice, even though it be assumed appellant did not actually receive the notice. Nevertheless, appellant is not without a remedy, provided he can establish any of the grounds enumerated in CR 60.02 for voiding the order entered increasing the maintenance allowance. Rule 60.02 (formerly Section 518 of the Civil Code of Procedure) is closely akin to Fed.Rule Civ.Proc. 60(b), and the latter Rule was applied in Ellington v. Milne, D.C.,

14 F.R.D. 241, and Tozer v. Charles A. Krause Milling Co., 3 Cir., 189 F.2d 242, where the defendant in each instance sought to set aside a default judgment and in both of these cases it was pointed out that the defendant must resort to F.R.C.P. 60(b) to obtain relief. We believe it is implicit that CR 60.02 provides the means whereby appellant must, if he is able so to do, seek a way out of his difficulty.

■ We conclude, however, the order appealed from must stand for the reason that appellant has not shown in the record before us any right to relief under CR 60.02 and in view of the fact, furthermore, that he was given a hearing on his twofold motion to vacate the maintenance increase and to obtain the custody of the two children.

Appellant undertook to show by the evidence of a private detective he hired to shadow appellee that she had been indiscreet in her relationship with a man she was going with steadily. It was asserted this man would make frequent visits to appellee's apartment and would sometimes remain there until early in the morning with all the lights out, except the one in the hall. When this person left appellee would be seen telling him good-bye at the front door in her nightgown, it was claimed. Thus, appellant's attempt to have the children awarded to him is bottomed upon appellee's alleged moral unfitness to rear them.

It was revealed that appellant is a bus driver in Detroit, Michigan, subject to call twenty-four hours each day, and he earns a guaranteed salary of $110 every two weeks. Since he does not maintain a home and could not keep the children with him, he proposed to place them, if they were turned over to him, with his 70-year-old mother out in the country in Casey County. The latter resides alone and her home is not equipped with any modern conveniences. It was disclosed that appellant, since his divorce, had lived for some time with a woman in Springfield, Ohio, without marrying her, that this woman had later committed suicide, and that appellant had been indicted in connection with the latter's death but had been exon-

erated. Appellant did not deny this misconduct charged against him.

Appellee, testifying about her home life, admitted a man had been a constant visitor in her home. extending over a period of five years and she explained further she was engaged to marry him, but she flatly denied that any improper relations had transpired between her and him or that she had ever been seen in his company in scanty attire. According to her, the lights were occasionally dimmed to enable every one to watch TV and, on these nights, the children were nearly always present, too. She said she worked hard to provide the comforts of life for her children. It was also brought out that her home was clean and well furnished, that the children attended school and church regularly, and that they received excellent care.

■ A consideration of the evidence introduced on both sides leads us to the conclusion there was no showing of neglect of duty toward the children on the part of their mother, even though some degree of indiscretion may be inferred from her going to the hall door dressed only in her nightgown to bid her suitor good night, assuming she did so. On the other hand, appellant presented no evidence that he was a suitable and proper person to have the custody of the children. We, therefore, conclude, as did the chancellor, that it would not be to the best interest of these children to take them from their mother, who has shaped their destiny thus far, and place them with their grandmother, who is relatively unknown to them. We believe it would not promote their welfare to remove them from an established home, school and church life in the city and transplant them in a rural community where their living conditions would be so utterly unlike anything to which they had been accustomed.

Wherefore, the judgment is affirmed.

MONTGOMERY, J., not sitting.

HOGG, J., dissenting.

CAMMACK, Judge (concurring)..

I feel that the decision reached in this case, on the question of service of notice by mail, is the only one that could be reached under our present Rules of Civil Procedure. However, I am concerned as to whether the rule represents the best policy in providing that *all* kinds of notices may be served by ordinary mail. The instant case illustrates the fact that under some circumstances, substantive relief sought by one party may be granted without the other party ever having received actual notice of the particular claim for relief.

It is my thought that the policy of the rule should be reconsidered, through the procedure provided in KRS 447.152 and 447.153. A possible amendment might be that if a motion is for an order or judgment granting a claim for substantive relief in the nature of a judgment in personam, which relief is in addition.to that sought in the original complaint in the action or granted by a previous order or judgment in the action, and the opposing party is not represented by an attorney, notice of the motion should be served by *registered* mail.

HOGG, Judge (dissenting).

I do not agree with the majority opinion and feel constrained to dissent. We have at the root of this case, as I see it, a denial of due process of law. I think that the action in the lower court denying appellant a hearing on order for increased payments amounted to that.

The order was entered without personal service upon the appellant. To the extent that the order increased the payment from $25 to $50 per month, it had the effect of rendering a personal judgment against appellant in the amount of the increase. In my opinion, the notice attempted to be given was insufficient on which to base a personal judgment. An order was entered without notice to appellant and without an opportunity for him to be heard. 17 Am.Jur., Divorce and Separation, Section 685, Page 519; Jasper v. Tartar, 224 Ky. 834, 7 S.W. 2d 236, 237. See cases collected 76 A.L.R. 253.

In the Jasper case, it was said:

"It is a fundamental principle of Anglo Saxon jurisprudence that no judgment is valid unless the defendant therein is brought before the court and given an opportunity to be heard. In other words, all litigants are entitled to their day in court, and any judgment against them, in any wise affecting their rights, made and entered contrary to that principle, is of no effect whatever and may be ignored by the one against whom it is rendered as though it had never been done. The proposition is too fundamental to require the citation of authority in support of it."

KRS 403.070 provides that the court retain jurisdiction over the subject matter; namely, the custody of the children. It does not serve to retain jurisdiction over the person of the parent, in this instance the father. In this case, the divorce action had been stricken from the docket and both parents were living outside Kentucky. While retaining jurisdiction over the custody of the children, the court no longer had jurisdiction over the person of appellant. It could not render a valid personal judgment except on personal service upon appellant.

The Muehlenkamp case cited in the majority opinion involves a statutory procedure to collect storage charges to which the property owner voluntarily submitted, either actually or constructively, knowing the effect of the failure to pay. Under this statute, the warehouseman could proceed only against the property stored which was a proceeding in rem. No personal judgment could have been obtained except by personal service. It was not a judicial proceeding such as this is.

The notices by mail in the New York cases cited, as I understand them, were not used as the basis for service upon which to obtain personal judgments. The federal cases cited are distinguishable on the ground that they were not cases where the action had been stricken from the docket and additional personal judgments were sought.

Appellant questioned the validity of the judgment but was denied the right to be heard under judicial duress, that is, penalty of contempt, until he purged himself by payment of what was in arrears.

The far-reaching and harsh construction given CR 5.02 seems to me to be unreasonable. If such construction were reasonable, the rule itself is violative of fundamental constitutional rights and should be changed to the end that no person may be deprived of his day in court nor of an opportunity to be heard before being deprived of his justiciable rights. I would reverse.