Jennifer J. MURPHY (Now Park)

v.

Oakley Dwayne MURPHY.

No. 2007–CA–002298–ME.

Court of Appeals of Kentucky.

Oct. 10, 2008.

Rehearing Denied Dec. 11, 2008.

Jennifer J. Park, Richmond, KY, pro se.

Sean M. Pierson, Richmond, KY, for appellee.

Before NICKELL and THOMPSON, Judges; ROSENBLUM,[1] Special Judge.

*OPINION*

NICKELL, Judge.

*Jennifer J. Murphy (now Park)* ("Park"), *pro se,* appeals an order of the Madison Circuit Court sustaining Oakley Dwayne Murphy's ("Murphy") verified motion to modify custody of their three minor children. Park claims the trial court erred in convening the modification hearing in her absence and in awarding Murphy sole custody of their children without making the findings of fact required by KRS[2] 403.340(3). Park maintains she did not receive notice of the September 28, 2007, hearing because Murphy served it on an attorney she had discharged in June of 2007 and that attorney forwarded the notice to her at an old address. Park claims service should have been made upon her directly because she had told Murphy she could no longer afford legal counsel and he had been to her home so he knew where she was living. After reviewing the record and the law, we reverse the custody modification and remand the matter to the trial

1. Retired Judge Paul W. Rosenblum sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution.

2. Kentucky Revised Statutes.

court for a hearing and the statutorily required findings.

## THE FACTS

Park and Murphy married in 1995 and had three children. On December 16, 2003, an agreed order was entered giving them joint custody of the children with equal timesharing. A separation agreement filed by the parties on May 19, 2005, designated Murphy as the primary residential custodian and gave the parties equal timesharing. The children were to rotate between Park and Murphy every three days.

On May 9, 2006, represented by Hon. Sean Pierson ("Pierson"), Murphy moved the court to hold Park in contempt for not paying debts. On May 23, 2006, Park, now represented by Hon. Billie Sue Woolley ("Woolley"), filed a verified response and a countermotion seeking a change in the summer visitation schedule. On June 1, 2006, Murphy asked the court to set a specific visitation schedule. On June 26, 2006, following a hearing, the court entered judgment in favor of Murphy and referred child support and timesharing issues to mediation. Woolley moved to alter, amend or vacate the judgment on Park's behalf on July 21, 2006. Following a hearing at which Woolley represented Park, an order was entered amending the July 11, 2006, judgment and crediting Park with payment of medical bills; overruling Park's motions to be credited with paying daycare expenses and to be awarded child support; overruling Murphy's request to modify visitation; and ordering both parents to rotate visitation with the children every three days. After the order amending the judgment was entered on August 24, 2006, Woolley did not move to withdraw from the case, nor did she advise the court or opposing counsel she no longer represented Park.

More than a year later, Murphy moved to modify custody by filing a verified motion and noticing the matter to be heard on September 28, 2007. Since Woolley was still Park's attorney of record, Pierson mailed the motion/notice to Woolley consistent with CR[3] 5.02. The motion/notice was filed by the trial court on September 6, 2007. On September 19, 2007, Woolley filed a "notice of nonrepresentation" with the court stating she no longer represented Park but had mailed a copy of the pending motion to her former client "on or about September 10, 2007 to her last known address at 124 Longview, Richmond, KY 40475." The notice provided no further details and was served only on Pierson as opposing counsel. Woolley did not send a copy of the notice of nonrepresentation to Park nor did she contact Park via e-mail.

The court convened the modification hearing on the morning of September 28, 2007. Murphy and Pierson were present; Park was not and neither was Woolley or anyone representing Park's interests. The court stated that despite Woolley having filed a notice of nonrepresentation, she was still Park's attorney of record and Pierson had correctly served the motion/notice upon Woolley as counsel of record for Park. When the court asked Murphy where he believed Park resided, Murphy candidly said Park had moved a couple of times since their last court appearance, but he believed her to be living at 209 Palm Hill Drive, Richmond, Kentucky.[4]

---

3. Kentucky Rules of Civil Procedure.

4. The record contains variations of this address. For consistency we will use the address Park typed in her June 29, 2007, e-mail to Woolley, "209 Palm Hill Drive."

The court stated it hoped Park had received notice of the hearing and permitted Pierson to state his client's grounds for asking to modify custody. Thereafter, the court said it saw no need to take proof in Park's absence; stated Murphy had followed the rules regarding the giving of notice; and sustained the motion to modify custody "in [Park's] absence." Park learned of the modification that afternoon when she called Murphy to finalize plans for the children's care that evening. At that point, Murphy told Park she should speak to her attorney and said he would be picking up the children. A written order, containing no findings of fact and sustaining Murphy's motion to grant him sole custody, was entered on October 3, 2007.

Park says she received the notice Woolley mailed to her on or about October 4, 2007. The next day, acting *pro se*, Park moved to alter, amend or vacate[5] the custody modification order alleging she did not receive timely notice of the hearing, she had discharged Woolley in June of 2007, and she had given Woolley her current mailing address. Park further alleged she had told Murphy she could no longer afford an attorney and Murphy knew her current address so he could have sent notice to her directly. Park urged the court to vacate the September 28, 2007, order or alternatively, order temporary visitation and set a hearing date. That same day, Park responded to Murphy's motion to modify custody and filed her own motion to modify custody. Attached to the response/motion was the e-mail Park sent to Woolley on June 29, 2007, saying in part:

Billie Sue,

I am sending you this email with much regret. Next month I am going to have to file bankruptcy. I can not (sic) pay the bill that I owe you. . . . We have had to move 2 times since then. At this time we don't have a home, we are staying with family.

. . .

I want you to know that I am very sorry. I do not know if you would want to send the paper to Madison county (sic) relieving yourself as my attorney. He is always threatening to take me back to court but the next time he does I will have to represent myself.

Like I said, I am very sorry but this is my only choice.

You can forward any mail to me at 209 Palm Hill Drive (sic) Richmond, KY (sic) 40475, this is my parents, or you can email me anytime.

Regretfully,

Jenny Park

The motion to alter, amend or vacate was heard on October 15, 2007. Park appeared *pro se*. The court asked her why Woolley, who was still her attorney of record, was not present. Park responded she did not need an attorney and alleged Woolley did not return her phone calls and did not present details about Murphy she deemed relevant. Pierson stated Murphy opposed Park's motion to alter, amend or vacate the custody modification because at the time of the previous hearing and entry of the modification order, Woolley was still Park's attorney of record and therefore service was properly made upon Woolley. Pierson also suggested the court issue a show cause order to Woolley to learn her version of the events.

After hearing from both parties, the court noted Murphy filed his verified motion to modify custody in good faith and complied with CR 5.02 in serving notice on Woolley. The court stated the notice of nonrepresentation filed by Woolley had no

5.  CR 59.05.

legal value since an attorney must receive permission from the trial court before withdrawing from a case and Woolley had not moved the court to allow her to withdraw from representing Park. Since notice of the hearing was mailed to Woolley with sufficient advance notice, the court overruled Park's CR 59.05 motion. The court entered a written order on October 17, 2007, overruling Park's motion to alter, amend or vacate and referring her request for temporary visitation to mediation.

On October 22, 2007, Woolley submitted an affidavit stating: (1) Park hired her for the limited purpose of responding to Murphy's motion to set a specific visitation schedule in April of 2006;[6] (2) Woolley's representation of Park ended when an amended judgment was entered resolving the visitation issue; (3) Woolley subsequently received an e-mail from Park saying she was unable to pay for Woolley's legal services, was filing bankruptcy, and provided a new mailing address; (4) Park's new address, 209 Palm Hill Drive, Richmond, Kentucky, was not entered into Woolley's computer system due to a "clerical error"; and (5) when Woolley received Murphy's motion/notice of hearing to modify custody, she mailed a copy of it to Park, notified Murphy's attorney she was no longer representing Park but had mailed a copy of the motion/notice to Park at 124 Longview, Richmond, Kentucky, and filed a notice of nonrepresentation with the court and served a copy of it on opposing counsel. The letter Woolley mailed to Park was not returned to Woolley's office, but was forwarded twice by the post office and ultimately reached Park at the 209 Palm Hill Drive address on October 4, 2007. Woolley, apparently attempting to excuse her own oversight, said in her affidavit it seemed reasonable to her that Murphy would have noticed the bad address and notified the court of her mistake.

On November 9, 2007, an agreed parenting schedule signed by Park and Murphy was entered designating Murphy as the primary residential custodian and giving Park weekend and Wednesday night visitation with the children. That same day, Park, now represented by Hon. Elizabeth Elkins Bond ("Bond"), renewed her motion to alter, amend or vacate the court's order giving sole custody to Murphy. In a separate pleading filed the same day, Bond moved the court to appoint a guardian *ad litem* ("GAL") to represent Park.

On November 13, 2007, while her renewed motion to alter, amend or vacate was pending, Park filed a notice of appeal to this Court. At a hearing on November 19, 2007, the trial court overruled Park's renewed motion to alter, amend or vacate, and also overruled the motion for appointment of a GAL for want of jurisdiction since the case was now on appeal to us. Two days later the trial court entered a formal written order overruling Park's motions.

On November 21, 2007, Woolley moved the trial court to allow her to withdraw from the case because Park had discharged her on or around June 29, 2007. An order allowing Woolley to withdraw was entered on December 3, 2007. For the reasons that follow, we affirm in part but reverse the custody modification and remand the matter to the trial court for the required hearing and findings of fact.

## ANALYSIS

Our standard of review in a custody modification case is found in CR 52.01.

---

6. Murphy disputes Woolley's statement that she was hired to represent Park only on Murphy's motion to set a specific visitation schedule. The record shows Woolley represented Park in May of 2006 on Murphy's motion to hold Park in contempt for failure to pay debts and again in June of 2006 on the motion to set a specific visitation schedule.

In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specifically and state separately its conclusions of law thereon and render an appropriate judgment.... Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

As stated in *Eviston v. Eviston*, 507 S.W.2d 153 (Ky.1974) (citing *Hamilton v. Hamilton*, 458 S.W.2d 451 (Ky.1970)), "the test is ... whether the findings of the trial judge were clearly erroneous or he abused his discretion."

Park's first allegation of error is the trial court convened the custody modification hearing without first finding Murphy's verified motion warranted a hearing. In contrast, Murphy argues he recited sufficient facts to justify holding a hearing. After reviewing Murphy's verified motion, we are convinced Murphy alleged sufficient grounds to justify holding a hearing. Thus, we find no error regarding this claim and affirm.

■ In Park's second allegation of error, she claims the trial court erroneously allowed the hearing to go forward in her absence knowing her receipt of notice was highly questionable. She claims the motion/notice should have been served upon her directly because Woolley filed a notice of nonrepresentation stating she no longer represented Park; Park had told Murphy she could no longer afford an attorney; and Murphy knew Park's current address. Park alleges she learned of the September 28, 2007, hearing from Murphy after the court had awarded sole custody of their children to him. She further alleges she did not receive actual notice of the motion to modify custody and the hearing until October 4, 2007. In contrast, Murphy urges us to affirm because he complied with CR 5.02 in serving notice on Woolley, as Park's attorney of record, and the validity of that service did not turn on Park receiving actual notice. *Benson v. Benson*, 291 S.W.2d 27, 30 (Ky.1956). We agree with Park and reverse for lack of notice.

KRS 403.350 mandates a party seeking custody modification "shall give notice, together with a copy of his affidavit, to other parties to the proceeding, who may file opposing affidavits." CR 5.02 specifies when service is to be made upon a party represented by counsel, "service shall be made upon the attorney unless service upon the party himself is ordered by the court." Normally, once an attorney appears in a case, he/she remains attorney of record until the trial court grants a motion to withdraw.[7] However, a niche has been carved for service of a post-divorce decree motion upon the divorce litigation attorney. In that situation,

the provision of CR 5.02 requiring that service of a motion be made upon the attorney of a party "represented by an attorney" clearly contemplates currency and continuity of litigation and representation. *It is our opinion that in a divorce case representation by [an] attorney is not to be deemed to have continued for the purpose of service in connection with proceedings for modification of the judgment upon a change*

---

7. Local Rule 16.02 of the Madison Circuit Court reads:

Withdrawal as Counsel: When an attorney of record desires to cease to act for a party, he/she should move the Court to allow him/her to withdraw as attorney of record. Such motion shall be served on the party as provided by Rule 5 of the Kentucky Rules of Civil Procedure. Until an order allowing withdrawal is entered, the attorney of record shall continue for all proper purposes. *See also U.S. v. Curry,* 47 U.S. 106, 6 How. 106, 111, 12 L.Ed. 363 (1848).

*of conditions, after the case otherwise has been finally concluded.*

*Guthrie v. Guthrie,* 429 S.W.2d 32, 35 (Ky. 1968) (emphasis added). Thus, as a matter of law, conclusion of the divorce action terminated the attorney-client relationship between Woolley and Park and sending notice to Woolley did not effectuate service upon Park as Murphy contends.

Furthermore, while there is no provision in our rules for the filing of a notice of nonrepresentation, and no case law explaining its effect, Woolley's filing of such a document, though not required in light of *Guthrie, supra,* put the court and opposing counsel on notice that Woolley no longer represented Park. At that point, a new hearing date should have been set and service of the motion/notice should have been made directly upon Park as provided for in CR 5.02. It was clear error for the trial court to proceed with the hearing in Park's absence and without some assurance Park knew the custody modification hearing was occurring. Thus, we reverse for lack of notice.

█ Park's third allegation of error is that the trial court modified custody without finding a change of circumstances in the children and/or their custodian and that modification was in the best interests of the children as required by KRS 403.340(3). Additionally, in determining the best interests of the children, the court did not indicate it had considered any of the factors enumerated in KRS 403.340(3) or KRS 403.270(2). Murphy argues Park waived any complaint about the lack of findings because she did not move the court to make more specific findings under CR 52.02 or CR 52.04. *Cherry v. Cherry,* 634 S.W.2d 423 (Ky.1982). We agree with Park and reverse and remand for a hearing and the statutorily required findings.

We set forth the trial court's order modifying custody in its entirety:

This cause having come on for a hearing on September 28, 2007, and [Park] having failed to appear, and [Murphy] having been present, it is **ORDERED, ADJUDGED** and **DECREED** as follows:

1. The motion of [Murphy] to modify custody is hereby **GRANTED.**

2. [Murphy] shall be awarded the sole care, custody and control of the minor children, namely, [**MLM, SKM** and **KJM**].

**DONE** and **ORDERED** this 28th day of Sept., 2007.

While brevity is appreciated, this order does not comport with the requirements of KRS 403.340(3). Were we to affirm this order, with its complete absence of any of the required findings, we would be giving our imprimatur to what amounts to a default judgment. There were no affidavits, no testimony and no findings by the trial court. We note that other jurisdictions, including Alabama and Missouri, have held default judgments in child custody proceedings should be subject to strict judicial scrutiny and affirmed only when compelled by the facts. *See, e.g., Dozier v. Dozier,* 222 S.W.3d 308 (Mo.Ct.App.2007); *Buster v. Buster,* 946 So.2d 474 (Ala.Civ.App.2006) (plurality opinion). Strict adherence to procedural rules should not take precedent over the court's duty to protect a parent's right to custody and its ultimate role of serving the best interest of the child. Only after a hearing when both parties have the opportunity to present evidence can the court render such a crucial decision. Thus, under the facts before us, it was clear error for the trial court to modify custody without engaging in the man-

dated statutory analysis and reducing its required findings to writing.

For the reasons expressed above, the order of the Madison Circuit Court is affirmed in part, reversed in part and remanded for a hearing and required findings.

ALL CONCUR.