RENDERED: DECEMBER 5, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1547-MR

ANNA WOOD                                                   APPELLANT

v.

APPEAL FROM OLDHAM CIRCUIT COURT
HONORABLE DOREEN S. GOODWIN, JUDGE
ACTION NO. 21-CI-00565

WILLIAM HUBER                                              APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, COMBS, AND EASTON, JUDGES.

CALDWELL, JUDGE: Anna Wood appeals from the Oldham Family Court's denial of her CR[1] 60.02 motion seeking to alter, amend, or vacate an order modifying a prior child custody decree to award sole custody to her ex-husband, William Huber. We reverse the denial of CR 60.02 relief and remand with

---

[1] Kentucky Rules of Civil Procedure.

directions to vacate the order modifying custody and to conduct a new, properly noticed hearing on the motion to modify custody.

## FACTS

William Huber ("Father") and Anna Wood ("Mother") have one child together, born in late 2008. Mother filed for divorce in the Oldham Family Court ("the family court") in 2021. The parties were divorced in 2022. The parties agreed to joint custody and roughly equal timesharing and for Father to pay Mother child support. Both parties were represented by counsel in the divorce proceedings.

In April 2024, Father filed a motion to abate child support. He alleged the child had been living full-time with him since late February at Mother's request. The family court conducted a hearing on this motion in May 2024. Mother was not present at the hearing. The family court granted the motion.

In late August 2024, Father filed a motion to modify custody so he would have sole custody and discretion over visitation. At the family court's September 6 motion hour, the motion was scheduled for an evidentiary hearing on September 19. The evidentiary hearing occurred as scheduled. Mother was not present at either the September 6 motion hour or at the September 19 hearing. The court entered an order granting Father sole custody on September 30, 2024.

On October 10, 2024, Mother filed a request for a copy of the entire case file. About a week later, the county attorney filed a motion to intervene on behalf of the Cabinet for Health and Family Services for child support purposes. On November 14, 2024, Mother, *pro se*, appeared at a hearing on child support and signed an agreed order to pay child support.

On November 15, 2024, Mother, *pro se*, filed a motion to alter, amend, or vacate the September 30, 2024, order granting Father sole custody.

Mother attached an affidavit to her CR 60.02 motion. She averred that she had not been properly served with notices or court orders and that the address on the notice of the modification motion was illegible—resulting in the notice's not being delivered for several weeks:

> On 8/27/2024, William Huber filed a motion for custody modification. I, Anna Huber, was not properly served with notice of the motion or the scheduled hearing, and as a result was unable to participate in the proceeding or present evidence and arguments pertinent to the matter. Statements in the order entered on 9/30/24 are false and had I been properly noticed I would have had the opportunity to refute these statements with evidence. My name and address were illegible on the notice mailed 8/27/24, resulting in being lost in the mail for more than one month. I did not receive the orders from the court until my request on 10/10/2024. Kentucky Rules of Civil Procedure, Rule 60.02, allows for a judgment to be vacated or set aside due to mistake, inadvertence, surprise, excusable neglect or other reasons justifying relief.

(Record on Appeal, "R", p. 323.)

Mother also attached a copy of an envelope with the return address from Father's counsel, postmarked 8/27/2024, with the section for Mother's address appearing to be blank on the copy provided. She also attached copies of Father's motion for custody modification and a copy of the case history (clerk's log) for this case.

Father filed a response by counsel. Father disputed Mother's claim that the notice envelope sent to her by his counsel was illegible, arguing the poor copy quality of the attachment submitted by Mother made it impossible to assess this claim. Father asserted he had taken all appropriate steps to notify Mother of his motion by sending her notices in the mail at the address she provided to him.

Next, Father asserted that even if the allegedly illegible notice had been lost in the mail, that did not explain why Mother would not have received multiple notices sent out that year, especially since his counsel sent notices to the address Mother provided. Father noted he had filed two motions that year with two hearing dates set, yet Mother failed to attend the motion hours for scheduling or the hearings on these two motions. Father also noted the court conducted hearings on the motions in May and September 2024 and asserted that the Court would have sent out notice of the hearing dates and the Orders resulting therefrom. Father also asserted that his counsel had none of the notices returned to her, so presumably Mother had received these notices.

Father further stated that Mother should have informed the court of her new address but failed to do so, and that he provided Mother's new address to the court in hearing testimony. Father also pointed out that despite Mother's failing to respond to or attend hearings on the motions to abate child support and to modify custody, Mother showed up for a hearing when the county attorney filed a motion to pursue child support from her. Father contended it was illogical to conclude that Mother did not receive some six notices from the court and him in 2024, but did receive the notice from the county attorney. He suggested Mother simply did not care about the court proceedings until child support was sought from her.

Mother's CR 60.02 motion was briefly noted during the family court's motion hour on November 22, 2024. The court verified that both Mother herself and Father's counsel were present, and that Father's counsel filed a response to Mother's motion. The court stated it would take the matter under submission and rule after it reviewed the parties' filings. Neither party made any further arguments at this motion hour.

A few days later, the court issued a written order denying Mother's CR 60.02 motion. The court noted Mother's claims about not receiving notice of motions and about the illegibility of the address on the notice of the motion for modification, allegedly causing the notice to be lost in the mail for over a month.

The court further stated that the motion to modify custody was initially set for a scheduling hearing on September 6, that the hearing on custody modification occurred on September 19 with Mother not present, and that it entered an order granting sole custody to Father on September 30, 2024.

The court found that the alleged illegibility of the notice of Father's modification motion could not be confirmed due to the poor quality of the copy of the envelope submitted by Mother as an attachment to her motion. The court also noted Father's assertion that even if this notice was lost in the mail, that did not explain how or why Mother did not receive multiple other notices sent in 2024. In a footnote, the court noted Father had filed two motions that year with hearings conducted in May and September. It also noted the county attorney filed a motion to pursue child support against Mother with the same address for service that Father used, but Mother only claimed she did not receive service from Father's counsel or the scheduling orders of the court.[2]

The court also took note that Mother did not appear at motion hours to set hearing dates and did not appear at the hearings on the motions. The court's

[2] Although not raised to the family court based on our review of the record, Mother states in her appellant brief that she also did not receive a notice from the county attorney in the mail—possibly due to a transposed number in her address, as shown by the certificate of service on the county attorney's motion. She also asserts in her brief that she appeared at the child support hearing because the county attorney's office contacted her by phone the evening before the hearing to make sure that she could attend the hearing on the county attorney's motion. (This assertion about the county attorney's office calling her also does not appear in her CR 60.02 motion or elsewhere in the record.)

-6-

order further stated: "Because no notices were returned to the Respondent's counsel and no concerns were raised, it was presumed that the Petitioner received them." It did not specifically address whether the record contradicted Mother's affidavit testimony that she had not received the court's orders, however.

The order concluded with a finding that Mother failed to meet her burden of proof for relief pursuant to CR 60.02. Mother filed a timely appeal from the family court's denial of her CR 60.02 motion.

On appeal, Mother asserts that the family court erred in denying her request for CR 60.02 relief for lack of notice. Further facts will be set forth as needed in our analysis.

## ANALYSIS

### Standard of Review

We review the denial of CR 60.02 relief for abuse of discretion. *Lawson v. Lawson*, 290 S.W.3d 691, 693 (Ky. App. 2009). "The test for abuse of discretion is whether the trial court's decision is arbitrary, unreasonable, unfair, or unsupported by legal principles." *Id*. at 694 (citing *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000)).

Kentucky precedent recognizes that an order may be properly vacated under CR 60.02 upon a showing that a party did not receive notice of the entry of the order. *Kurtsinger v. Board of Trustees of Kentucky Retirement Systems*, 90

S.W.3d 454, 455-56 (Ky. 2002).[3]   Similarly, an order may be properly vacated

pursuant to CR 60.02(f) based on lack of notice of hearings.  For example,

particularly in a child custody matter for which default judgments are not favored,

CR 60.02(f) relief from a judgment for lack of notice may be merited even when

one's not receiving notice stems from one's own actions.  *Dull v. George*, 982

S.W.2d 227, 229 (Ky. App. 1998).[4]

---

[3] In *Kurtsinger*, our Supreme Court reversed the Court of Appeals and reinstated a trial court's order vacating a prior order which denied CR 59.05 relief pursuant to CR 60.02.  Our Supreme Court noted:  "The question here is whether a trial court may vacate a CR 59.05 order under CR 60.02 upon a finding that a party did not receive notice of entry of the order."  90 S.W.3d at 455. The trial court had granted CR 60.02 relief due to some parties' not receiving notice of entry of the order denying CR 59.05 relief, apparently due to error by the judge or judicial staff.  *Id*.  Our Supreme Court discerned no abuse of discretion by the trial court and stated:  "CR 60.02 was adopted for such circumstances."  90 S.W.3d at 456.

[4] In *Dull*, we stated:

> The reason George gave for requesting relief from the orders granting temporary and permanent custody to Dull was that she did not have notice of the earlier custody hearings.  Noting that George moved to Virginia without notifying Dull, the court, or her own attorney, the circuit court found that any lack of notice was a circumstance of George's own creation.  However, the court noted that default judgments are not favored, and that the best interests of the child should govern the determination of child custody, giving each parent equal consideration. It granted George's motion under CR 60.02(f) and scheduled a full custody hearing.

> We find no abuse of discretion.  It is true that George had a fair opportunity to present her claim at the trial on the merits but chose to leave the state without notice.  However, we find that granting CR 60.02(f) relief was not inequitable to Dull.  By reopening the case, the court considered all available evidence.  Dull was allowed to present his case and counter George's arguments.

982 S.W.2d at 227 (citation omitted).

Not only is a grant of CR 60.02 relief properly within a court's discretion for lack of notice, but authority dictates that denial of such relief is reversible error when a party shows he or she did not receive proper notice of court orders—for example, due to clerical error.

As we stated several years ago: "it is well within the rule's stated grounds and the authority of the court to invoke CR 60.02 when a clerk is responsible for a mistake that prevents a party from receiving notice of the entry of an order or judgment." *Hoffman v. Hoffman*, 500 S.W.3d 234, 237 (Ky. App. 2016). In *Hoffman*, the family court denied a motion to alter, amend, or vacate an order reducing maintenance because the motion was not filed within ten days of the order's entry. *Id.* at 235-36. *See also* CR 59.05.

Noting the party who sought to vacate the judgment sought relief under CR 60.02 as well as CR 59.05, this Court reversed the denial of CR 60.02 relief because the clerk failed to promptly mail copies of the order to the parties:

> The family court found that both attorneys involved did not receive the order until thirteen days after its entry. Because both attorneys received the order on the same date at different addresses, the only plausible explanation for the delay is that the clerk did not promptly mail the notices of their entry. The family court expressly stated that it was "not opposed, if the rules so allowed, to reconsider the matter." Pursuant to CR 60.02, the family court had the authority to grant Gloria relief and remedy the prejudice caused by the clerk's failure to promptly mail the order reducing maintenance.

*Id*. at 237-38.

Similarly, the family court here erred in denying Mother's CR 60.02 motion because of uncontradicted proof that court orders at issue were not being sent to Mother and were not received by her.

In the present case, although Father's counsel may have provided proper notice of the motions filed by Father, we conclude the denial of CR 60.02 relief must be reversed and the case remanded for a new, properly noticed hearing on custody modification because the record indicates that Mother did not receive notice of court orders due to clerical error.

Although the family court did not necessarily err in finding that Father provided proper notice of his motions, the family court failed to properly consider proof provided by Mother showing that court orders were not being sent to her. We shall briefly address the family court's correct conclusion that Father's counsel did everything required to provide proper notice of motions before discussing the court's error in failing to note clear indications of clerical error in the record for which Mother provided proof in the attachments to her CR 60.02 motion.

**Family Court Correctly Recognized that Father's Counsel Did Everything Required to Provide Proper Notice of Motions**

As the family court noted in its order, Father's motion to modify custody listed Mother on the certificate of service at the same address as that provided for Mother on her own motions. CR 5.02(1) provides that service on an

unrepresented party may be made by mailing a copy to the party's last known address and states: "Service is complete upon mailing unless the serving party learns or has reason to know that it did not reach the person to be served." Therefore, in the absence of other evidence showing Mother did not receive the notice, there was no reason to suspect that Mother did not receive notice of the motion prior to Mother's filing her CR 60.02 motion.

Mother did present some proof of not receiving notice of the motion, however, because her affidavit attached to her CR 60.02 motion stated she did not. She also averred that her address on the notice envelope was illegible, and she attached a purported copy of the notice envelope. But having examined this copy in the record, we agree with the family court that the copy quality is so poor that it does not show whether Mother's address is illegible—instead, the copy appears to be an envelope which appears almost completely blank except for the postmark and return address.

Therefore, we do not necessarily find any error in the family court's determination that Mother had not met her burden to show she failed to receive notice of Father's motion to modify custody. The copy of the envelope submitted by Mother appeared to be largely blank and Father's counsel stated notices had been properly sent to Mother. Mother's assertion she had not received proper notice of Father's motion was a matter in dispute, thus requiring the family court to

assess credibility and to choose which party's version of events to believe. However, Mother did not only claim that Father failed to provide notice of his motions. Instead, Mother also clearly stated that she did not receive the court's orders prior to October 10, 2024 (when she requested the case file) and Mother attached a copy of the case history/clerk's log to her CR 60.02 motion.

### Family Court Abused its Discretion in Denying CR 60.02 Relief and Not Vacating Custody Modification Order Because of Uncontroverted Evidence that Court Orders Were Not Sent to Mother

On appeal, Mother again claims she did not receive copies of the family court's orders. She also points out that after about mid-October 2023, her name is not listed in the clerk's log of notices of entries of orders, including those setting hearings and the order modifying custody. However, other than briefly noting Mother claimed she did not receive court scheduling orders as well as notices of motions and generally concluding Mother did not meet her burden of proof, the family court did not address evidence about whether its orders were properly sent to Mother.

Based on the case history/clerk's log, which Mother attached to her CR 60.02 motion, Mother is correct in her assertion that she is not listed on the clerk's notice of entry for relevant orders at issue here—the orders scheduling and

ruling on the motion for custody modification.[5]  Instead, the clerk's log reflects that these orders were sent to an attorney who formerly represented Mother rather than to Mother herself.

As Mother points out on appeal, the clerk's notice of entry for the orders setting the hearing on the modification motion and ruling on the modification motion do not list Mother.  However, these notices of entry of these relevant orders do list Father's attorney ("AD-Stoess") and "AP Magruder."  Notices of entries of relevant orders sent from late July 2023, when Mother started representing herself, until the early part of October 2023, on the other hand, list mother ("P-Anna") as well as AP Magruder.

Looking over this case log, this Court suspected that "AP" referred to an attorney for the plaintiff or petitioner since Mother filed the divorce petition.  Moreover, having reviewed the full clerk's case log in the record on appeal, it is clear to us that a clerical error occurred resulting in court orders at issue here being sent to a former attorney for Mother rather than to Mother herself.

Mother was originally represented by attorney Cynthia Magruder in the divorce proceedings.  However, in February 2022, attorneys Elizabeth

---

[5] While Mother may not have been listed on the notice of entries for other orders, her CR 60.02 motion only raised issues about her receiving notices and court orders related to the custody modification issue.  Because she only sought relief from the custody modification and not from the family court's orders resolving other issues such as child support, we need not address whether she was included in the notice of entries for orders concerning issues other than Father's request to modify custody.

-13-

McConahy Jenkins and Christine Schiffman filed an entry of appearance and substitution of counsel on Mother's behalf. In July 2023, Attorneys Jenkins and Schiffman filed a motion to withdraw, stating Mother intended to represent herself in any further proceedings. The family court entered an order granting the motion to withdraw shortly thereafter. While Mother acted *pro se* in further proceedings, Father continued to be represented by Attorney Laura Ellis Stoess.

Attorneys Jenkins and Schiffman made clear in their motion to withdraw that Mother intended to represent herself. Moreover, they had previously filed a notice of substitution for them to take over Mother's representation from Attorney Magruder. However, a clerical error evidently occurred because the clerk's log indicates that court orders were being sent to Attorney Magruder and not to Mother during the custody modification proceedings.

Since Mother averred to not receiving court orders and since the clerk's case log she attached to her CR 60.02 motion shows that orders scheduling hearings and ruling on the motion to modify custody were not sent directly to her, the family court abused its discretion in denying the CR 60.02 motion and not vacating the custody modification order.

Other than Mother's motion to vacate for lack of notice being styled as a CR 60.02 motion rather than a CR 59.05 motion (perhaps due to timeliness concerns), this case resembles *Murphy v. Murphy*, 272 S.W.3d 864 (Ky. App.

-14-

2008). In *Murphy*, the trial court granted a parent's (Murphy's) motion to modify custody to sole custody following a hearing at which the other parent (Park) was not present. *Id.* at 865-66.

Park alleged she received the notice of the father's motion to modify and the scheduled hearing date a day after the written modification order was entered and several days after the hearing occurred. *Id*. at 868. Park filed a CR 59.05 motion to alter, amend, or vacate the custody modification order for lack of notice the next day, *id.*—well within the ten-day deadline for filing CR 59.05 motions.[6]

Park asserted: "she did not receive notice of the September 28, 2007, hearing because Murphy served it on an attorney she had discharged in June of 2007 and that attorney forwarded the notice to her at an old address." *Id.* at 864. Park also argued that "service should have been made upon her directly because she had told Murphy she could no longer afford legal counsel and he had been to her home so he knew where she was living." *Id.*

Because Park's former attorney had not filed a motion to withdraw, the trial court still considered this attorney to be Park's counsel of record and accepted that Murphy had properly served Park by mailing notice of the motion to

---

[6] CR 59.05 states: "A motion to alter or amend a judgment, or to vacate a judgment and enter a new one, shall be served not later than 10 days after entry of the final judgment."

-15-

this attorney. *Id.* at 866-67. Thus, the trial court denied Park's motion to alter, amend, or vacate the custody modification order. *Id.* at 867.

This Court reversed the modification of custody[7] since Park did not receive timely notice of the motion to modify custody. We cited precedent holding that representation automatically terminated when the divorce decree was entered and noted Park's former attorney had filed a notice of non-representation, putting Murphy and the trial court on notice that the attorney no longer represented Park. *Id.* at 868-69 (citing *Guthrie v. Guthrie*, 429 S.W.2d 32, 35 (Ky. 1968)).

In *Murphy*, we held:

> a new hearing date should have been set and service of the motion/notice should have been made directly upon Park as provided for in CR 5.02. It was clear error for the trial court to proceed with the hearing in Park's absence and without some assurance Park knew the custody modification hearing was occurring.

272 S.W.3d at 869. Thus, we reversed for lack of notice. *Id.*

We recognize that *Murphy* is in some respects different than this case. For example, unlike Park's clearly pointing out to the trial court that notice

---

[7] Orders denying CR 59.05 motions are considered interlocutory and not appealable; thus, we do not review the denial of CR 59.05 motions themselves but instead review the underlying judgments. *See generally Ford v. Ford*, 578 S.W.3d 356, 364-66 (Ky. App. 2019). On the other hand, an order denying CR 60.02 relief is appealable. *See, e.g.*, *Hoffman*, 500 S.W.3d 234. Thus, we review the denial of CR 60.02 relief rather than the underlying order modifying custody. Prior to Mother's filing the CR 60.02 motion, the thirty-day deadline for filing a direct appeal from the modification order had already passed. *See generally* Rule 3 of the Kentucky Rules of Appellate Procedure.

was sent to her former attorney rather than to her despite the notice of non-representation, Mother simply averred to not receiving court orders and attached part of the clerk's case log to her CR 60.02 motion without further explanation.

Mother did not clearly assert to the family court that orders had been improperly sent to a former attorney instead of to her. And Mother did not explicitly point out in her CR 60.02 motion or affidavit or at the brief motion hour discussion that the attached case log did not list her by name in the notice of entries of orders, as she did on appeal.

So, Mother's arguments or assertions to the family court about not receiving court orders were not made with the same clarity as on appeal. Perhaps the issue of whether court orders should have been sent to Mother rather than to her former attorney was not properly preserved by clearly raising it to the family court. Nonetheless, the family court committed palpable error, *see* CR 61.02, by refusing to vacate its custody modification order given the unchallenged proof that Mother did not receive court orders (her affidavit) and that orders were being sent to her former attorney rather than to Mother (the portion of the clerk's case log attached to her CR 60.02 motion).

Though Park filed a CR 59.05 motion and Mother filed a CR 60.02 motion (perhaps because the ten-day period for filing a CR 59.05 motion had already elapsed), both sought to vacate child custody modification orders rendered

without proper notice. Moreover, even if Mother had proper notice of Father's filing the motion to modify, Mother averred that she did not receive court orders before she filed her request for the case file on October 10, 2024. Also, the attached portion of the clerk's case log shows that orders—including those scheduling a hearing on and ruling on the custody modification motion—were sent to a former attorney rather than directly to Mother.

We note the court's order scheduling the custody modification hearing indicates that a copy of the order should be sent to Mother as a *pro se* party. However, the clerk's notice of entry indicates this scheduling order was sent to Attorney Magruder and not to Mother. Regardless of whether the attorney received or attempted to forward the scheduling order to Mother, the clerical error in sending the scheduling order to a former attorney and not to Mother herself could impact the timeliness of Mother's receiving notice of the scheduled hearing date on the modification motion—which could in turn impact Mother's having an opportunity to be heard. (In fact, Mother's affidavit attached to her CR 60.02 motion states that Mother would have had an opportunity to present evidence to refute what she perceived as false statements if she had been given notice of the scheduled hearing.) The presumption in CR 5.02(1) that service is complete upon mailing unless the party has reason to know the document did not reach the addressee does not apply to the court's scheduling and custody modification orders

-18-

because there is no indication those orders were ever mailed directly to Mother at any address.

As for the court's order granting the custody modification motion, this order itself does not have a distribution list indicating to whom copies should be sent. Moreover, the notice of entry in the clerk's case log again indicates the order was sent to Attorney Magruder and not to Mother. Even if the attorney received and attempted to forward the scheduling order to Mother, any delay in Mother's receiving the court orders could impact her ability to file a timely CR 59.05 motion to vacate or to file a timely appeal from the order. *Compare Hoffman*, 500 S.W.3d at 235-38.

Furthermore, even though Mother may not have taken steps to advise the court of her address, Mother's *pro se* status had been made clear to the family court, and Father had testified on the record to Mother's new mailing address. While ideally Mother would have provided her new address to the court and she may not be entirely blameless for circumstances leading to her not receiving court orders, granting her CR 60.02(f) relief for lack of notice would not be inequitable to Father and a new custody modification hearing would allow both parties to present evidence and challenge each other's arguments. *See generally Dull*, 982 S.W.2d at 229. Even if Mother did not adequately keep the court abreast of her current address, such an error is immaterial here since the undisputed record shows

that the court's orders were sent to Mother's former counsel, not to Mother's old address or new address.

As Mother notes in her brief, due process requires a party to receive notice and an opportunity to be heard. *Storm v. Mullins*, 199 S.W.3d 156, 162 (Ky. 2006). A party may properly seek relief under CR 60.02 from a decision for which the party did not receive adequate notice, even if a statute would otherwise facially bar on timeliness grounds the party from seeking relief. *Id.* at n.4. The uncontradicted record here shows that Mother was proceeding *pro se*, yet the clerk's log shows the court's scheduling order and the custody modification order were sent to Mother's former counsel, not to Mother. Thus, clerical errors prevented Mother from having proper notice and an opportunity to be heard. The family court abused its discretion by declining to address the undisputed lack of proper notice of court orders to Mother.

We recognize that our stated reasons for reversal—especially our recognition that court orders were being sent to Mother's former attorney instead of to Mother—go beyond Mother's arguments on appeal. Nonetheless, we have the authority to reverse for reasons supported by the record even if such reasons were not raised by the appellant—particularly in cases impacting a parent's fundamental liberty interests in child custody. *See generally W.H.J. v. J.N.W.*, 669

S.W.3d 52, 55-56 (Ky. App. 2023). *See also Priestley v. Priestley*, 949 S.W.2d 594, 596 (Ky. 1997); *Barker v. Commonwealth*, 341 S.W.3d 112, 114 (Ky. 2011).

Also, though our framing of the issues is not precisely the same as Mother's, our analysis of the record aligns with the fundamental core of her arguments—especially as we afford a "degree of lenity" and use a "conciliatory attitude" towards *pro se* litigants. *Smith v. Bear, Inc.*, 419 S.W.3d 49, 55 (Ky. App. 2013).

In our view, given the precedent discussed in this opinion and parental fundamental liberty interests in child custody, coupled with due process rights to notice and opportunity to be heard, the family court's denial of CR 60.02 relief under the facts here resulted in reversible error. The family court abused its discretion in denying Mother's CR 60.02 motion because the uncontradicted record shows that Mother was not sent and did not receive copies of the order setting the modification hearing and the order modifying custody.

We reverse the denial of CR 60.02 relief and remand with directions to vacate the custody modification order and to conduct a new, properly noticed hearing on the custody modification motion. However, we need not address Mother's other arguments for relief on appeal.

**We Decline to Address Mother's Other Arguments for Appellate Relief**

Since we reverse the denial of CR 60.02 relief based on lack of notice, we decline to address Mother's argument that the family court failed to make all statutorily required findings in the custody modification order as unnecessary to our resolution of this appeal. Similarly, we decline to address Mother's argument that CR 60.02 relief should have been granted on the basis of fraud or financial misconduct on Father's part since Mother is entitled to CR 60.02 relief based on lack of notice in the custody modification proceedings.

We also decline to address Mother's argument that the family court judge was biased, and that Mother is entitled to a hearing before a new judge. Similarly, we decline to address Father's assertions that the judge was not biased and that grounds for recusal or disqualification were not established.

Mother did not file a motion with the family court requesting the judge's recusal. *See* KRS[8] 26A.015. Nor did she file an affidavit with the circuit clerk explaining why the judge would not afford her a fair and impartial trial, so the circuit clerk could certify the facts to the Chief Justice and the Chief Justice

---

[8] Kentucky Revised Statutes.

-22-

could determine whether to designate another judge to hear the case. *See* KRS 26A.020.[9]

In sum, Mother did not raise issues of judicial bias prior to the appeal. Also, there has been no prior determination of whether the family court judge should have recused or been disqualified for us to review in this appeal. Moreover, we decline to engage in fact-finding to determine these previously unraised issues about whether the judge was biased or should have recused or been disqualified. As our Supreme Court aptly stated: "As an appellate court, we review judgments; we do not make them. In this Commonwealth, it is axiomatic that appellate courts are not fact-finders." *Klein v. Flanery*, 439 S.W.3d 107, 122 (Ky. 2014) (internal quotation marks, citation, and parentheses omitted).

Further arguments in the parties' briefs which have not been discussed in this Opinion have been determined to lack merit or relevancy to our resolution of this appeal.

## CONCLUSION

For the foregoing reasons, we REVERSE the denial of CR 60.02 relief. We REMAND the case to the family court with directions to enter an order

---

[9] *See also generally Diaz v. Barker*, 254 S.W.3d 835, 838 (Ky. App. 2008) (party seeking for judge to be removed from case has "two alternative remedies"—either filing a motion for the judge to recuse under KRS 26A.015 or filing an affidavit for relief from the Chief Justice under KRS 26A.020). We express no opinion on the likelihood that Mother could obtain relief under KRS 26A.015 or KRS 26A.020 should she choose to pursue such remedies in the future.

vacating the custody modification order and to conduct a new, properly noticed hearing on custody modification.

ALL CONCUR.

BRIEF FOR APPELLANT:

Anna Wood, *pro se*
Louisville, Kentucky

BRIEF FOR APPELLEE:

Laura Ellis Stoess
Crestwood, Kentucky