JONES, JUDGE:
Paula P. Ford ("Paula") appeals from several orders of the Mason Circuit Court rendered in connection with the dissolution of her marriage to John S. Ford III ("John"). Paula asserts the trial court erred when it refused to set aside a separation agreement she negotiated with John during a court-ordered mediation, ordered the separation agreement incorporated into the parties' dissolution decree even though it was unconscionable, and later *359 denied her CR [1] 59.05 motions to set aside the judgment (incorporating the agreement) without allowing her to present additional evidence at a hearing. Following our review of the record and all applicable legal authority, we affirm the trial court's order incorporating the parties' settlement agreement into the final dissolution decree over Paula's objection. We decline to review any issues associated with the trial court's denial of Paula's CR 59.05 motion to alter, amend or vacate because orders denying CR 59.05 motions are interlocutory and not subject to appellate review.
I. BACKGROUND
After thirty years of marriage, John filed a petition for divorce from Paula on September 9, 2014. Shortly thereafter, Paula, who resides in Colorado, sent correspondence to the trial court indicating that she had been unable to hire an attorney in Kentucky, but that she and John had agreed that he would withdraw his petition for dissolution of marriage. Paula indicated that she and John had reached an agreement on the division of their real and personal property and would file for legal separation sometime later. The trial court does not appear to have taken any action on Paula's letter as John's petition remained pending.
Almost a year later, on August 21, 2015, John filed a motion to have his petition referred to the Domestic Relations Commissioner for a hearing on property division issues. John stated that he and Paula had discussed several proposed settlements but had been unable to reach an agreement. Both parties filed preliminary verified disclosure statements, which demonstrated that, in addition to the parties' significant marital assets, each had substantial non-marital assets. The trial court entered a status quo order on December 16, 2015, and referred the parties to mediation.
Both parties accompanied by their respective legal counsel participated in mediation on April 19, 2016. Despite owning significant marital and non-marital property, the parties did not have any appraisals of their residential and commercial real property performed to aid in dividing their property at the mediation. Instead, John and Paula relied on their own estimates of property values. At the time of mediation, the parties estimated the total value of their major marital assets to be $ 1,585,390, comprised as follows:
1. Real property located at 1315-1337 US 68 S, Maysville, KY, (the "Southgate Plaza") with an estimated fair market value of $ 610,390;[2]
2. Real property located at 635 Larimer Street, Steamboat Springs, CO (the "Steamboat Property"), with an estimated fair market value of $ 700,000;[3]
3. A fifty-percent interest in real property located at 1910 Old Washington, with an estimated value of $ 165,000; and
4. A marital Roth IRA, with a value of $ 110,000.
*360 The mediation appeared to be successful, as a handwritten Mediation Agreement Order (the "Agreement") was filed of record on April 22, 2016.[4] The Agreement was signed by Paula, John and their respective counsel. The Agreement stated as follows:
1. The parties shall exchange copies of their last will and testament and make no changes thereto without notice to the other party.
2. [John] shall make any financial [power of attorney] only to his sister, brother in law, or Tom Duke.
3. Each party shall keep the vehicles in their name ( [John] 2004 Ford Ranger and 2006 Nissan) ( [Paula] 2004 Volvo, 2002 Subaru).
4. [Paula] shall receive the [Steamboat Property].
5. [Paula] shall receive her [non-marital] Schwabb [sic] account.[5]
6. [John] shall receive the Roth IRA and the four non-marital Schwab accounts in his name.[6]
7. [John] shall receive Southgate Plaza; 1910 Old Washington, Maysville, KY; all interest in Ford Acre's [sic] Farm and Carmel St. LLC; and Perry Place Subdivision.[7]
8. In exchange for marital equity, [John] shall pay to [Paula] $ 135,000 within 90 days hereof.
9. All household goods and furnishing have been amicably divided between the parties.
10. This resolves all issues between the parties and each will seize all documents necessary to carry out this agreement as soon as possible. This case is ready for a final uncontested decree.
R. 63-66.
Paula does not dispute that she agreed to the above terms during the mediation. However, shortly after the mediation, Paula began to have doubts regarding the settlement. It appears Paula's shortcomings prevented the parties from "formalizing" the agreement into a typed written document.
On April 25, 2016, John moved the trial court to enter a decree of dissolution. Two days later, Paula filed a motion requesting the trial court vacate the Agreement and a motion requesting that the court declare the Agreement unconscionable. Paula stated that during her and John's marriage, she had an equitable interest in the Southgate Plaza business. She alleged that John had reorganized the business during the parties' separation and transferred Paula's interest to himself without any consideration. Paula argued that if she had retained her equitable interest in Southgate Plaza, she would not have needed to bargain for a payout of her marital interest in the business as she could have retained her equitable interest and continued to receive income from it. Paula additionally contended that John had not provided her with his preliminary verified disclosures in a timely fashion. Paula contended that the Agreement deprived her of $ 30,000 of annual income on which she was relying for her retirement. She expressed her worry that, without that income, she would be *361 forced to sell the Steamboat Property. Paula contended that it was that concern, coupled with the fact that she had not eaten lunch and had low blood sugar during mediation, that had caused her to settle for the "pitiful" lump sum payment of $ 135,000.
John filed a response to both of Paula's motions on May 12, 2016. Therein, John noted that both parties are educated, both had been represented by counsel during the entirety of the mediation, and that both had disclosed their financial information prior to mediation. John informed the court that Paula had received more than half of the value of the parties' marital assets. As to Paula's expressed concern about retirement funds, John noted that Paula had received $ 80,386 from dividends and rent in 2015, while he had only earned $ 67,362 that year from investments and rent. Further, John informed the court that Paula was co-trustee and co-beneficiary of a trust valued at $ 2 million, and would receive one-half of the corpus of that trust upon the death of her ninety-two-year-old mother. John disputed Paula's claim that her suffering from low blood sugar during the mediation weakened her negotiation skills. He noted that Paula had not requested a break during mediation or suggested that mediation be continued. In an affidavit sworn by John and attached to his response, John agreed with Paula that she did not have any equitable interest in the Southgate Plaza. However, John testified that Paula's interest in that business had ended in 1998, when it was restructured for the parties' children's trust.[8]
A hearing was held on May 13, 2016; however, the video recording is not included in the record before this Court. On May 25, 2016, the trial court entered an order denying Paula's motion to vacate and motion to declare the Agreement unconscionable. The trial court concluded that the terms of the Agreement indicated that it was the result of a bargained for exchange. The trial court noted the fact that Paula's requests that the parties not change their wills and that John be limited in his choice of power of attorney had been included in the Agreement reflected that she was very much involved in the bargaining process. Additionally, the trial court found that under the terms of the Agreement Paula was to receive 53% of the parties' marital estate. Further, Paula retained approximately $ 1 million in non-marital assets and had the expectation of receiving another $ 1 million. The trial court found that in addition to Paula using the Steamboat Property as her home, she rented out a portion of it and received income from it. Thus, the trial court concluded that income from the Steamboat Property, combined with the income Paula receives from her interest in her trust, would provide her with sufficient future income. The trial court noted that Paula was free to sell the Steamboat Property and invest the proceeds into a higher-income-producing property if she chose. Also, on May 25, 2016, the trial court entered a decree of dissolution of marriage, which incorporated the terms contained in the Agreement.
Sometime thereafter Paula retained new counsel. With the assistance of her new counsel, on June 2, 2016, Paula filed a CR 59.05 motion to alter, amend, or vacate. In that motion, Paula argued that John had not resided in Kentucky for the 180 days preceding his filing the petition for divorce as required by KRS [9] 403.140, meaning *362 that the trial court lacked subject matter jurisdiction. In support of her claim, Paula contended that John maintains a Colorado driver's license, files Colorado tax returns, and receives mail in Colorado. Paula maintained her argument that John had failed to timely and completely provide her with all financial documents and-for the first time-alleged that John had stated during mediation that the Southgate Plaza had recently been appraised and received a new value. Paula claimed that this statement was a fraudulent material misrepresentation, which should render the Agreement unenforceable. Additionally, Paula contended that the Agreement was insufficient to comply with the requirements of KRS 403.180(4)(a) because it was not, on its face, a "separation agreement" and only separation agreements could be incorporated by reference as a continuing order in a decree of dissolution. Finally, Paula argued that the trial court had erred in considering her non-marital property when determining whether the Agreement was unconscionable.
John responded to Paula's CR 59.05 motion on June 21, 2016. He denied Paula's claim that he had not resided in Kentucky for the requisite period prior to filing the petition for dissolution. John acknowledged that he had owned real estate with Paula in Colorado and paid taxes in Colorado; however, he stated that he had continually maintained his residence in Maysville, Kentucky, had a Kentucky driver's license, and managed businesses in Kentucky. John stated that in the months leading up to his filing the petition, he had been physically present in Kentucky for 210 days, as opposed to the 133 days he had spent in Colorado. John contended that he and Paula had made a complete exchange of all financial information after he filed the petition for dissolution, and that Paula had been the custodian of many of the parties' financial documents. John denied telling Paula that he had recently had the Southgate Plaza appraised. He claimed that the only statement he made during mediation regarding an appraisal was when he stated that the last time the Southgate Plaza was appraised was in the mid-1990s by Mark Kachler. Finally, John contended that Paula's contention that the Agreement was unenforceable because it had not been titled "separation agreement" simply had no basis in law.
On June 23, 2016, Paula filed an affidavit from Mark Kachler with the trial court, in which Mr. Kachler averred that he had not prepared any appraisal related to the Southgate Plaza within the last five years and could not recall any conversation with John about the value of the Southgate Plaza. The following day, the trial court entered an agreed order continuing the hearing on Paula's CR 59.05 motion. On August 1, 2016, the trial court ordered Paula to provide a list of witnesses she intended to call in support of her CR 59.05 motion, along with a summary of proposed testimony and supporting exhibits.
Paula filed a status report with the court on August 23, 2016, identifying two individuals whom she believed would provide expert information demonstrating that John had made misrepresentations to her during mediation. Paula stated that she had retained Mr. Kachler to provide an appraisal of the Southgate Plaza. Mr. Kachler's appraisal report was attached to the status report, and indicated that the fair market value of the Southgate Plaza was approximately $ 1 million (the "Kachler Appraisal"). The Kachler Appraisal indicated that the value of the Southgate Plaza was based on numerous factors: the location, size, and utility of the land; the highest and best use of the land and of the property has improved; sales, asking prices, and rentals of vacant sites and improved properties in the vicinity of the *363 Southgate Plaza and in the general area; existing leases and current leases under negotiation; and cost of replacement new of the improvements, and that cost less depreciation arising from all causes. R. 124.
Paula had also retained Joy Hall, a tax attorney, to evaluate John S. Ford III Limited Partnership (the "Limited Partnership"), the entity that owns the Southgate Plaza. Ms. Hall's report concluded that the marital value of the Limited Partnership was $ 450,058 (the "Hall Appraisal"). The Hall Appraisal calculated the rent-generated income of the Limited Partnership to be $ 921,076. Because John only had a 68.8% interest in the Limited Partnership, Ms. Hall had determined that the marital estate's pro rata value of the partnership would be $ 633,700. Ms. Hall had then used a discount for lack of marketability of 13.6% and a discount for lack of control of 17.8% to reach the final value.
John filed a response to Paula's status report on September 13, 2016. Therein, he noted that Paula had failed to identify any individual that would support her claim that he had made a fraudulent misrepresentation during mediation. John observed that while the Hall Appraisal had accounted for the fact that he only held a 68.8% interest in the Limited Partnership that owns the Southgate Plaza, the Kachler Appraisal did not appear to do so. He noted that $ 688,000-which represented 68.8% of the $ 1 million value reached in the Kachler Appraisal-was relatively close to the value the parties had given the Southgate Plaza during mediation, given the size of the marital estate. John further noted that both he and Paula had used the property valuation administrator's assessment to value both the Southgate Plaza and the Steamboat Property in their preliminary financial disclosures and had known neither property had been formally appraised. John noted that his independent research revealed that the Steamboat Property actually had an estimated value between $ 829,530 and $ 953,077-much greater than the $ 700,000 value the parties had used during mediation.[10] However, John acknowledged that a risk of not having property appraised was that it could be under or over-valued, and that the fact that property had been under-valued was not grounds for reopening a dissolution action.
On October 4, 2016, the trial court entered orders further continuing the hearing date on Paula's CR 59.05 motion and giving both parties the opportunity to submit additional proof as to the conscionability of the Agreement. Paula filed a motion for the trial court to set a hearing on February 6, 2017. John responded, requesting that the trial court deny Paula's request for a hearing and her request to alter, amend, or vacate. John noted that Paula had still not identified any testimony that would demonstrate that the Agreement was unconscionable. He urged the trial court to reject Paula's suggestion that it combine the values from the Hall Appraisal and the Kachler Appraisal to value the Southgate Plaza.
On February 15, 2017, John filed an appraisal report from Bill Dalzell, which concluded that the fair market value of the Steamboat Property was $ 805,000. Paula filed a letter from Ms. Hall with the trial court on May 9, 2017, which again stated that the total marital interest in the Limited Partnership was $ 450,058. Ms. Hall's letter clarified that the Hall Appraisal was based on the rent received from leasing units located in the Southgate Plaza, and had not accounted for the value of the actual structure. Paula additionally requested *364 that the trial court set a hearing date and that she be given the opportunity to call witnesses to set forth the basis for her position that the Agreement was unconscionable. On July 13, 2017, John filed an analysis and opinion from Nicholas Sypniewski, an Accredited Senior Appraiser at ComStock Advisors, discussing the value of the Limited Partnership. Mr. Sypniewski's analysis was based on a review of the Hall Appraisal and the Kachler Appraisal. Mr. Sypniewski noted that the Hall Appraisal and the Kachler Appraisal had each used different methods of valuation. Because the Kachler Appraisal used income generated by the Southgate Plaza in determining the real estate's value, Mr. Sypniewski stated that the two appraisals should not be added together, as that would be counting the same income twice. Rather, it was Mr. Sypniewski's opinion that the Hall Appraisal and the Kachler Appraisal represented a range of values from which to draw a conclusion as to the Southgate Plaza's value.
On August 9, 2017, the trial court entered an order denying Paula's motion to alter, amend, or vacate its order denying her motion to vacate and declare the mediation agreement unconscionable. In that order, the trial court concluded that the Hall Appraisal and the Kachler Appraisal could not be added together because they both included income received from business conducted in the Southgate Plaza. The trial court noted that even though the value of the Southgate Plaza used for mediation purposes was arguably a little low, the same was true of the value of the Steamboat Property used in mediation. Accordingly, the trial court concluded that any difference in the valuation from that used in mediation was not significant enough, considering all assets, to make the Agreement unconscionable.
That same day, the trial court entered an order affirming its jurisdiction and the dissolution order. The trial court noted that Paula had admitted that John had lived in Maysville, Kentucky for more than 180 days prior to his filing the dissolution petition in her answer. Further, the trial court found that the pleadings and affidavits submitted, as well as testimony taken, demonstrated that John had been a resident of Kentucky for at least 180 days prior to filing the petition and that Paula had not submitted anything of record disputing this. Accordingly, the trial court found that it did have subject matter jurisdiction to enter the decree of dissolution and affirmed entry of the decree.[11]
Thereafter, Paula filed a notice of appeal of: the decree of dissolution entered on May 25, 2016; the order denying her motion to vacate or declare the Agreement unconscionable, entered on May 25, 2016; the order affirming the circuit court's jurisdiction and the order of dissolution, entered August 9, 2017; and the order denying her motion to alter, amend, or vacate the May 25, 2016 orders, also entered on August 9, 2017.
II. DENIAL OF CR 59.05 MOTIONS
Much of Paula's appellant brief is devoted to the trial court's denial of her CR 59.05 motions. In addition to attacking the substance of the trial court's decision, Paula argues that trial court abused its discretion when it refused to convene a hearing where she could present this new evidence and testimony prior to ruling on her CR 59.05 motions.
Paula misconceives the purpose of a CR 59.05 motion as well as the effect *365 of the denial of such a motion. First, CR 59.05 is very limited. It is not intended to be used in the way Paula used it. Its primary purpose is to allow parties to call errors of law and fact to the trial court's attention prior to appeal. However, "[a] party cannot invoke CR 59.05 to raise arguments and to introduce evidence that should have been presented during the proceedings before the entry of the judgment." Gullion v. Gullion , 163 S.W.3d 888, 894 (Ky. 2005). Moreover,
Although a trial court may grant a CR 59.05 motion if the movant presents newly discovered evidence that was not available at the time of trial, "newly discovered evidence" must be of facts existing at the time of trial. If it were grounds for a new trial that facts occurring subsequent to the trial have shown an inaccurate prophecy, litigation would never come to an end. Thus, it is improper for a trial court to rely upon evidence of events that occurred subsequent to the trial in ruling on a CR 59.05 motion.
Id. (citations and footnotes omitted).
Paula did not explain why the information she included in her written motion and supplements and that she wanted to present at the hearing on her CR 59.05 motion could not have been presented earlier either as part of her original motion to set aside the Agreement or as part of the trial court's May 13, 2016, hearing on the issue of whether the Agreement was unconscionable. While Paula might not have obtained the appraisals until after she filed her motion, the facts upon which they were based were available to her. Paula may not have thought to have a prior appraisal conducted or she may have chosen not to do so for some reason. The evidence, however, was there for Paula to discover well before the trial court entered its judgments. As the evidence was available to Paula and could have been presented to the trial court before it rendered the judgment at issue, it was not properly included as part of Paula's CR 59.05 motion. Therefore, we do not believe the trial court erred when it ruled on Paula's CR 59.05 motion without holding a full evidentiary hearing.
However, we note that even if we did believe the trial court erred in some fashion in connection with its denial of CR 59.05 relief, we could not provide a remedy for the simple reason that we do not have jurisdiction over the trial court's denial of a CR 59.05 motion. "Orders denying CR 59.05 relief 'are interlocutory, i.e., non-final and non-appealable and cannot be made so by including the finality recitations.' " Hoffman v. Hoffman , 500 S.W.3d 234, 236 (Ky. App. 2016) (quoting Tax Ease Lien Investments 1, LLC v. Brown , 340 S.W.3d 99, 103 (Ky. App. 2011) ); see also Mingey v. Cline Leasing Serv., Inc. , 707 S.W.2d 794, 796 (Ky. App. 1986) ("Unlike a ruling denying a motion for relief under CR 60.02, a ruling on a CR 59.05 motion is not a final or an appealable order. There is no authority in the rules to ask for reconsideration of a mere order which rules on a motion to reconsider a judgment.") (internal citation omitted). The Court of Appeals lacks jurisdiction to hear cases from interlocutory orders. KRS 22A.020 ; Cassetty v. Commonwealth , 495 S.W.3d 129, 131 (Ky. 2016). While there are a few exceptions to that general rule, none of those exceptions address orders on CR 59.05 motions. Id. at 131 n.2.
In their briefs to this Court, both Paula and John posit that "[t]he denial of a Motion to Alter, Amend, or Vacate is subject to the abuse of discretion standard."[12]
*366 William C. Eriksen, PSC v. Kentucky Farm Bureau Mut. Ins. Co. , 336 S.W.3d 909, 911 (Ky. App. 2010). A standard of review for orders this Court has clearly indicated are non-reviewable is befuddling. Nonetheless, numerous opinions from this Court parrot that language. See e.g., Hall v. Rowe , 439 S.W.3d 183, 186 (Ky. App. 2014) ; Mortgage Elec. Registration Sys., Inc. v. MainSource Bank , 425 S.W.3d 892, 894 (Ky. App. 2014) ; Cabinet for Health & Family Servs. v. J.T.G. , 301 S.W.3d 35, 38 (Ky. App. 2009).
Our case law is clear, however, that there is no appeal from the denial of a CR 59.05 motion. The denial does not alter the judgment. Accordingly, the appeal is from the underlying judgment, not the denial of the CR 59.05 motion. When a trial court denies a CR 59.05 motion, and a party erroneously designates that order in his or her notice of appeal, we utilize a substantial compliance analysis and consider "the appeal properly taken from the final judgment that was the subject of the CR 59.05 motion. " Tax Ease Lien Investments 1 , 340 S.W.3d at 103 n.5 (emphasis added) (citing Felix v. Lykins Enters., Inc. , 2010 WL 4137276 (Ky. App. Oct. 22, 2010) (ordered not published by Kentucky Supreme Court Apr. 18, 2012)).
Many of the arguments Paula makes on appeal deal with the trial court's denial of her CR 59.05 motion or reiterate arguments she made only in that motion, including her claim of fraudulent misrepresentation.[13] We will not consider those arguments any further. Our substantive review is limited to the propriety of the trial court's refusal set aside the Agreement and/or declare it unconscionable.
III. ANALYSIS
"[T]he terms of [a] separation agreement ... are binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, ... that the separation agreement is unconscionable." KRS 403.180(2). "Settlement agreements may be set aside on the ground of unconscionability if the trial court determines that the terms are manifestly unfair or unreasonable." Money v. Money , 297 S.W.3d 69, 72 (Ky. App. 2009) (citing McGowan v. McGowan , 663 S.W.2d 219, 222 (Ky. App. 1983) ). "Agreements may also be set aside if they are the result of fraud, undue influence, or overreaching." Id. (citing McGowan , 663 S.W.2d at 222 ). "The party challenging the agreement must carry a 'definite and substantial' burden of proof." Mays v. Mays , 541 S.W.3d 516, 524 (Ky. App. 2018) (quoting Peterson v. Peterson , 583 S.W.2d 707, 711 (Ky. App. 1979) ). "The family court is in the best position to weigh the evidence and determine if a separation agreement is unconscionable or if it resulted from duress, undue influence, or overreaching." Id. (citing Shraberg v. Shraberg , 939 S.W.2d 330, 333 (Ky. 1997) ). We defer to the circuit court's broad discretion regarding such determinations. Id.
Paula first argues that the trial court erred in concluding that the Agreement is not unconscionable as its findings regarding the value of the marital property assigned to each party were not supported *367 by substantial evidence. She contends that the trial court relied exclusively on John's statements in his response. The record does not support this contention. The trial court valued the Steamboat Property at $ 700,000. This was the figure that John cited in his response to Paula's motion to vacate; however, it was also the figure cited by both parties in the preliminary verified disclosures, which were signed under oath and verified. Additionally, the trial court valued the parties' marital Roth IRA at $ 110,000; that figure is supported by a statement for that account John filed with the court as an attachment to his preliminary verified disclosure. Accordingly, it is not an accurate statement to contend that the trial court relied solely on John's statements in valuing the parties' marital property.
It does appear that the trial court relied on John's response when finding values for the Southgate Plaza and the 50% interest in the 1910 Old Washington property. We do note, however, that there was a hearing on Paula's motion to declare the Agreement unconscionable on May 13, 2016. As that hearing was not made a part of the record on appeal, we have no way of knowing what testimony was offered. "If evidence is missing from the record, we must assume that the trial court's decision is supported by the record." King v. Commonwealth , 384 S.W.3d 193, 194-95 (Ky. App. 2012) (citing Smith v. Smith , 235 S.W.3d 1, 5 (Ky. App. 2006) ; Commonwealth v. Thompson , 697 S.W.2d 143, 145 (Ky. 1985) ). We further note that, besides Paula's later contention that John misrepresented the value of the Southgate Plaza in mediation, there is no indication in the record that Paula objected to the values John indicated the parties had assigned to their marital property. Accordingly, we find no error.
Paula next argues that the trial court's analysis of whether the Agreement was unconscionable was erroneous in that it considered her non-marital property, without acknowledging that John likewise retained significant non-marital property. Additionally, she contends that the fact that her non-marital assets may be greater in value than John's non-marital assets should not have been considered by the circuit court to offset the disparity in value of the division of the parties' marital assets.
We note that the trial court found that Paula received $ 835,000 in marital assets, which amounts to approximately 53% of the parties' marital estate. This finding was supported by substantial evidence. The trial court's order additionally finds that John retained significant non-marital property, including four investment accounts with a total approximate value of $ 730,603 and his interests in Ford Acres Farm, Carmel St., LLC, and Perry Place Subdivision. Accordingly, we reject Paula's contentions that there was a disparity in value of the marital assets she and John received and that the trial court failed to consider John's non-marital assets. While the trial court did go into greater detail discussing Paula's non-marital assets, this was due to the fact that Paula's motion to vacate the Agreement centered on her contention that she had not retained sufficient assets to support herself. Further, it is entirely proper for a court to consider non-marital property when determining whether division of assets is conscionable. KRS 403.180(2) explicitly states that a court should consider "the economic circumstances of the parties" when determining whether a separation agreement is unconscionable. Assuming there is some discrepancy in the marital assets received by John and Paula, "[a] mere discrepancy in *368 the amounts received by each party under a settlement agreement is not enough to render the agreement unconscionable." Money , 297 S.W.3d at 73 (citing Peterson , 583 S.W.2d at 712 ).
IV. CONCLUSION
Based on the foregoing, we AFFIRM the orders of the Mason Circuit Court dissolving the parties' marriage and denying Paula's motions to set aside the Agreement and to declare the Agreement unconscionable.
ALL CONCUR.

Kentucky Rules of Civil Procedure.

In their preliminary verified disclosure statements, both Paula and John estimated the fair market value of the Southgate Plaza as $ 562,500; however, Paula did indicate that this was the minimum possible value of the property. The $ 610,390 value was apparently agreed upon during mediation. The Southgate Plaza is commercial property.

The Steamboat Property is a residence, and a portion of it is rented out to a tenant as an apartment. Both John and Paula estimated that its fair market value was $ 700,000 in their preliminary verified disclosure statements. None of the parties' real property was encumbered by mortgages.

It does not appear that a formal separation agreement was ever prepared.

There is no documentation reflecting the value of this account in the record; however, it is generally acknowledged throughout the record that this account has a value of approximately $ 950,000-$ 1,000,000.

As of October 19, 2015, John's four non-marital Charles Schwab accounts had a total value of $ 730,605.15. R. 41-48.

Only the Southgate Plaza and the Old Washington property were considered marital property. Values for the remaining property are not of record.

Paula and John have two children; both were emancipated by age at the time the petition was filed.

Kentucky Revised Statutes.

This range was based on a Zillow Zestimate®. R. 215.

Paula did not address the jurisdictional issue in her appellant's brief to this Court. As such, we will not discuss that issue any further.

Despite the fact that John has not contested Paula's ability to appeal from the orders denying her CR 59.05 relief, "this court is required to raise a jurisdictional issue on its own motion if the underlying order lacks finality." Tax Ease , 340 S.W.3d at 101 (citing Huff v. Wood-Mosaic Corp. , 454 S.W.2d 705, 706 (Ky. 1970) ).

We note that, had Paula argued that the decree incorporating the Agreement must be set aside because it was procured by fraud in a CR 60.02(b) or (d) motion, this Court would have jurisdiction to consider an order denying that motion.