RENDERED: FEBRUARY 9, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0334-MR

PRIYANKA NICHANI                            APPELLANT


v.           APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE A. CHRISTINE WARD, JUDGE
ACTION NO. 20-CI-501106


SAHAAS NICHANI                              APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, CETRULO, AND JONES, JUDGES.

CETRULO, JUDGE: This is an appeal from an Order of the Jefferson Family Court granting joint custody and equal parenting time to parents of a three year old child, A.N. Although that ruling was part of a lengthy and complex marital dissolution action, the only argument raised on appeal is whether the family court abused its discretion when it awarded joint custody and equal parenting time to the parents. Upon review, we find no abuse of discretion and affirm the family court.

**FACTUAL BACKGROUND**

In December 2017, Priyanka Nichani ("Priyanka") and Sahaas Nachani ("Sahaas") were married in India. At the time, Sahaas resided in Kentucky. Priyanka moved to Kentucky shortly after, and they were legally married in the United States in February 2018. Their child, A.N. ("Child"), was born in November 2019. On February 6, 2020, the Jefferson Family Court issued a Domestic Violence Order ("DVO") in favor of Priyanka against Sahaas. The DVO also awarded temporary sole custody of the Child to Priyanka and required Sahaas to attend the Batterer's Intervention Program ("BIP").

Three months later, Priyanka filed a petition for dissolution of the marriage. Sahaas promptly sought parenting time, and the family court appointed a Friend of the Court ("FOC") to investigate and report to the court on a temporary parenting schedule. A drug test was also ordered on Sahaas, which was negative. The FOC provided his report to the family court in June 2020, recommending a temporary shared parenting schedule, which the court followed. The family court also ordered supervised exchanges of the Child and appointed psychologist Dr. Kathryn Berlá ("Dr. Berlá") to perform an Issue Focused Assessment regarding the parties' parenting schedule.

In August 2020, Priyanka's father passed away in India. From August through December, Priyanka was in India for the funeral and associated rituals.

She sought to take the Child with her, but could not due to passport and visa issues. The Child remained with Sahaas and the paternal grandparents in Kentucky while Priyanka was away. For a period of two weeks in Fall 2020, Sahaas also traveled to India, leaving the Child with his parents while the parties attempted reconciliation, to no avail. Upon his return to the United States, Sahaas sought equal parenting time. In December 2020, the FOC recommended a 2-2-3 parenting schedule, which the family court adopted. The parties have since operated under that schedule. In 2021, the parties filed several motions, including two requests by Priyanka to take the Child to India, which the family court denied.

In 2022, both parties filed motions pertaining to custody and parenting time. After mediation failed, Dr. Berlá submitted her Issue Focused Assessment. Dr. Berlá's extensive evaluation spanned from February 2021 through October 2021 and reflected only information gathered during that time frame. The FOC filed his final report, recommending that Dr. Berlá's report be given "due weight." The action proceeded to a two-day trial on August 24 and September 7, 2022. At trial, the family court heard testimony from both parties, the FOC, Dr. Berlá, Dr. Richard Purvis, a licensed psychologist ("Dr. Purvis"), and Jamie Wilkinson, a licensed counselor ("Mr. Wilkinson"). Both Dr. Purvis and Mr. Wilkinson testified on behalf of Sahaas. Dr. Berlá opined that the parties should have joint custody, but recommended that Priyanka be designated the primary residential

-3-

parent. She also stated that she would have reduced Sahaas's parenting time to four out of every 14 days.

The FOC testified that the Child appeared to be doing very well under the equal timesharing schedule, but he did not disagree with Dr. Berlá's recommendations. Mr. Wilkinson testified that Sahaas had completed 35 counseling sessions, including the BIP. Dr. Purvis testified that he had conducted 12 clinical sessions with Sahaas and opined that the prior DVO should not prevent someone from having equal timesharing with a child. Both parties testified at length, and on January 25, 2023, the family court entered an 18-page order ("January 2023 Order") continuing the joint custody arrangement and the equal parenting time schedule. Priyanka filed a Kentucky Rule of Civil Procedure ("CR") 59.05 motion to alter, amend, or vacate the January 2023 Order, which the family court denied. Priyanka appealed, asserting that the family court abused its discretion in denying the CR 59.05 motion and by awarding joint custody and improperly disregarding Dr. Berlá's recommendations.[1]

---

[1] "Our case law is clear, however, that there is no appeal from the *denial* of a CR 59.05 motion. The denial does not alter the judgment. Accordingly, the appeal is from the underlying judgment, not the denial of the CR 59.05 motion." *Ford v. Ford*, 578 S.W.3d 356, 366 (Ky. App. 2019). When a trial court *denies* a CR 59.05 motion, as it did here, and a party erroneously designates that order in the notice of appeal, we utilize a substantial compliance analysis and consider the appeal properly taken from the final judgment that was the subject of the CR 59.05 motion. *Id.* (citations omitted).

## STANDARD OF REVIEW

This Court reviews the family court's order as to custody under Kentucky Revised Statute ("KRS") 403.270, and parenting time under KRS 403.320. Our review is pursuant to an abuse of discretion standard. *Cherry v. Cherry*, 634 S.W.2d 423, 425 (Ky. 1982) (citation omitted) ("[T]he test is not whether we would have decided [the issue] differently, but whether the findings of the [family court] were clearly erroneous" or an abuse of discretion.). Trial courts are "vested with broad discretion in matters concerning custody and visitation." *Jones v. Livesay*, 551 S.W.3d 47, 51 (Ky. App. 2018) (citations omitted).

## ANALYSIS

Priyanka acknowledges that the family court applied the proper statutes, and indeed, the family court recited the relevant portions of each, as follows:

> Although Kentucky Revised State [sic] 403.270 ("KRS 403.270") presumes joint custody, Kentucky Revised Statute 403.315 ("KRS 403.315") provides the following guidance:
>
> When determining or modifying a custody order pursuant to KRS 403.270, 403.280, 403.340, 403.740, the court shall consider the safety and well-being of the parties and of the children.
>
> If a [DVO] is being or has been entered against a party by another party or on behalf of a child at issue in the custody hearing, the presumption that joint custody and equally shared parenting time is in the best interest of

the child shall not apply as to the party against whom the [DVO] is being or has been entered. The court shall weigh all factors set out in KRS 403.270 in determining the best interest of the child.

As the presumption of joint custody and equally shared parenting time is inapplicable, the Court is guided by KRS 403.270 which offers the following guidance in determining the best interests of the child:

(a) The wishes of the child's parent or parents, and any de facto custodian, as to his or her custody;

(b) The wishes of the child as to his or her custodian, with due consideration given to the influence a parent or de facto custodian may have over the child's wishes;

(c) The interaction and interrelationship of the child with his or her parent or parents, his or her siblings, and any other person who may significantly affect the child's best interests;

(d) The motivation of the adults participating in the custody proceeding;

(e) The child's adjustment and continuing proximity to his or her home, school, and community;

(f) The mental and physical health of all individuals involved;

(g) A finding by the court that domestic violence and abuse, as defined in KRS 403.720, has been committed by one (1) of the parties against a child of the parties or against another party. The court shall determine the extent to which the domestic violence and abuse has affected the child and the child's relationship to each party, with due consideration given to efforts made by a party toward the completion of any domestic violence treatment, counseling, or program;

. . .

(k) The likelihood a party will allow the child frequent, meaningful, and continuing contact with the other parent or de facto custodian, except that the court shall not consider this likelihood if there is a finding that the other parent or de facto custodian engaged in domestic violence and abuse, as defined in KRS 403.720, against the party or a child and that a continuing relationship with the other parent will endanger the health or safety of either that party or the child.

The January 2023 Order addressed each of the above sections of KRS 403.270, noting that the parents had differing wishes about custody, that the Child was too young to provide his wishes, and that the Child appeared to be well adjusted to both homes. The family court further noted that both parties had sought to be actively involved in the Child's life and that he had a strong bond with both parents as well as with the paternal grandparents. The family court observed that the equal parenting schedule had existed for nearly two years during which no endangerment or safety issues had been proven.

Specifically, with regard to KRS 403.270(g) and (k), and the domestic violence history, the family court stated as follows:

With regard to KRS 403.270(g), the Court has considered the history of domestic violence between the parties. Given the past trauma and instances of violence, it is understandable that Priyanka maintains a level of distrust toward Sahaas. However, Sahaas has at least attempted to address these concerns by completing a [BIP] Program and consistently remaining involved in therapy.

Further, Sahaas completed an online co-parenting course to better communicate with Priyanka for the sake of the [Child].

Having considered KRS 403.270(k), the Court has concerns that Sahass [sic] as a former perpetrator of acts of domestic violence upon Priyanka, will continue to battle with Priyanka for power and control in the parenting relationship. The Court has concerns he may find ways to use the [Child] to manipulate and gain compliance by Priyanka with his demands. However, the Court also notes that despite Sahaas' efforts to address his shortcomings and Dr. Berlá's recommendation that the parties exercise joint custody, Priyanka is unwavering in her request for sole custody, reporting to Dr. Berlá that she should be sole custodian, in part, due to her ability to make "better decisions." The Court considered Priyanka's initial suggestion that Sahaas exercise parenting time via Facetime and she reside in Pennsylvania. The Court believes Priyanka failed to appreciate how such a proposal would gravely affect [the Child] and Sahaas's relationship and believes the same applies to her request to not allow Sahaas to have any say in the [C]hild's upbringing. Additionally, Priyanka's decision to exclude Sahaas from [the Child]'s first haircut, despite acknowledging the cultural significance, indicates to the Court her failure to appreciate the role and value of Sahaas as the [C]hild's father.

Throughout the January 2023 Order, the family court did address each of the relevant factors required under KRS 403.270. The family court then awarded joint custody, observing that:

Although Priyanka and Sahaas have a history that cannot be ignored, individual and coparenting progress has been made; albeit slow. As such, joint custody can be appropriate if it appears that with time parents will be able to achieve an acceptable level of cooperation. *Squires v.*

-8-

*Squires*, 854 S.W.2d 765, 768-69 (Ky. 1993). Sahaas and Priyanka are united in their position to further [the Child]'s best interests. In light of all the Findings set forth above, the Court believes joint custody to be in the [C]hild's best interest.

On appeal, Priyanka asserts that the family court made "short shrift" of her arguments, but we do not agree. Indeed, the January 2023 Order demonstrates a detailed analysis of each of the factors pursuant to KRS 403.270.

Specifically, Priyanka asserts that the family court erred by not following the recommendations of Dr. Berlá, but in fact, Dr. Berlá recommended joint custody. Priyanka sought sole custody throughout the proceedings as well as more parenting time than Sahaas, which Dr. Berlá did suggest. However, the family court heard from several other witnesses and was free to weigh the opinions and credibility of all the witnesses in determining the best interests of the Child. *See Jones v. Jones*, 617 S.W.3d 418, 424 (Ky. App. 2021) ("The family court . . . is the trier of fact and, as such, is responsible for judging the credibility of witnesses."). The January 2023 Order noted the extent of counseling and completion of the BIP by Sahaas since the assessment. Additionally, the family court was aware of Priyanka's expressed intentions to move the Child from Kentucky, perhaps as far as India. Finally, the family court noted that there had been no evidence confirming drug use by Sahaas, as Priyanka had claimed. Neither was there any evidence of any effect of the prior violence upon the Child.

KRS 403.270 provides that the court must consider numerous statutory factors, not just psychological evaluations. *Reichle v. Reichle*, 719 S.W.2d 442, 445 (Ky. 1986). An expert's opinion is merely one piece of evidence to consider in its "best interests" determination.[2] The family court properly noted that the presumption of equal parenting time envisioned by KRS 403.270 was rebutted by the history of the DVO. This required a full hearing to determine the best interests of the Child, which the family court conducted. The family court then applied the correct law, acted within its discretion, and did not abuse that discretion in determining that joint custody was in the best interest of the Child.

Secondly, Priyanka asserts that the family court abused its discretion in continuing an equal visitation/parenting schedule under KRS 403.320. Again, we turn to the family court's order and the discussion of the parenting time motions:

> The family court held as follows:
>
> As noted above, the presumption of equally shared parenting schedule envisioned by KRS 403.270 is rebutted by the history of domestic violence. As such, the Court must construct a parenting schedule which advances [the Child]'s best interest.

---

[2] The family court also responded to this claim in its order denying Priyanka's CR 59.05 motion, as follows: "The purpose of an expert witness is to assist the trier of fact to understand the evidence or to determine an issue in fact. [Kentucky Rule of Evidence] 702. Dr. Berlá's Report, while thorough and insightful, was only part of the evidence considered by the Court."

Priyanka requests that the Court's Temporary Order be modified and that Sahaas's parenting time be minimized as proposed by Dr. Berl[á]. Under the statute governing the modification of visitation, including Temporary Custody Orders, a court can modify timesharing if it is in the best interests of the child. However, the Court can only order a less than reasonable timesharing arrangement if the child's health is seriously endangered. *Layman v. Bohanon*, 599 S.W.3d 423 (Ky. 2020). There is no set formula for determining whether a modified timesharing arrangement is reasonable; rather, it is a matter that must be decided based upon the unique circumstances of each case. *Id*.

As the parties have exercised an equal parenting schedule for nearly two years, the Court concludes that to reduce Sahaas's parenting time to every other weekend, and one overnight would be unreasonable.

The foregoing illustrates that the family court properly applied the law and understood its obligation to create or uphold a timesharing arrangement that was in the best interest of the Child. The January 2023 Order incorporated the court's prior reasoning and analysis of the factors in awarding joint custody, but recognized that the presumption of KRS 403.270 for equal parenting time did not apply to Priyanka's motion for a modification of parenting time, citing *Layman*.

In *Layman*, the Kentucky Supreme Court specifically noted that there was no "formula for determining whether a modified timesharing arrangement is reasonable" and that each case "must be decided based upon" its unique set of facts. *Layman*, 599 S.W.3d at 432 (citation omitted). As to the parenting time, *Layman* makes clear that "the family court could either (1) order a reasonable

-11-

timesharing schedule if it found that it would be in the best interests of the child[]

to do so or (2) order a 'less than reasonable' timesharing arrangement if it first

found that the children's health was seriously endangered." *Id.* at 432. There, the

Supreme Court reversed this Court for "conflation of the standards for custody

determination under KRS 403.270 and timesharing modification under

KRS 403.320." *Id*. at 431.

Here, however, the family court specifically recited the proper

application of both statutes and explained that the presumption for equal parenting

time did not apply to the claim arising under KRS 403.320, governing modification

of timesharing. The family court was required to address both statutes in light of

the motions for custody and motions for modification of parenting time. In so

doing, the family court kept the analyses separate and properly applied the facts to

the relevant statutes.

We will only reverse a determination as to visitation and parenting

time if it constitutes an abuse of discretion or was "clearly erroneous in light of the

facts and circumstances of the case." *Drury v. Drury*, 32 S.W.3d 521, 525 (Ky.

App. 2000) (citation omitted). Also, as mentioned, "[d]ue regard shall be given to

the opportunity of the trial court to judge the credibility of the witnesses."

*Humphrey v. Humphrey*, 326 S.W.3d 460, 463 (Ky. App. 2010) (citing *Murphy v.*

*Murphy*, 272 S.W.3d 864 (Ky. App. 2008)). The family court supported its

findings with evidence indicating that the equal timesharing was reasonable and based on the Child's best interest. The family court expressed concern that both Priyanka and Sahaas needed to be involved with the Child and noted that the Child was doing well with the current timesharing schedule. Therefore, we do not find that the family court abused its discretion.

For the foregoing reasons, we AFFIRM the rulings below.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Paul Hershberg
Louisville, Kentucky

BRIEF FOR APPELLEE:

Louis P. Winner
Sidney M. Vieck
Louisville, Kentucky