RENDERED:  JANUARY 9, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0721-MR

RICHARD WESLEY EVANS        APPELLANT

APPEAL FROM EDMONSON CIRCUIT COURT
v.  HONORABLE CATHERINE R. HOLDERFIELD, JUDGE
ACTION NO. 22-CI-00105

MERIDITH RENA EVANS
(NOW CLAYTON)           APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, CALDWELL, AND CETRULO, JUDGES.

CETRULO, JUDGE:  The Edmonson Family Court entered an order modifying the parties' timesharing arrangement.  The father, Richard Wesley Evans ("Father"), appealed.  Having reviewed the record and applicable law and finding no clearly erroneous factual findings nor abuse of discretion, we affirm the family court.

## FACTS & BACKGROUND

In 1999, Father and Meridith Evans ("Mother") married, and in October 2022, Mother petitioned for dissolution of the marriage. At the time of the petition, the parties had two minor children[1] (born in 2013 and 2017). In March 2023, the parties signed and tendered a separation agreement resolving numerous issues related to the dissolution including, relevantly, timesharing ("Agreement").

The Agreement allocated shared joint custody of the minor children with their primary residence at Father's home. The Agreement stated the parties' intention to continue homeschooling and raising the children in their Messianic faith. The Agreement allowed for the parties to discuss and arrange parenting time, but "in the event the parties d[id] not agree," then Mother would have parenting time Thursday mornings until Friday one hour before sunset (Mother's work off-days). The parties agreed to specifics regarding vacation and holiday time, including, by example, giving 45 days' notice to the other for vacations.

Further in the Agreement, Mother and Father agreed to respond "in a timely manner" to the other parent's communications, to discuss activities important to the children with each other in advance, and to keep the other informed of the names and contact information of all professionals engaging with children. The Agreement also specified agreed upon parenting behaviors such as

---

[1] And three adult children.

not asking the children to keep secrets from the other parent and not disparaging the other parent in the presence of the children.

In June 2023, the family court entered a decree of dissolution incorporating the Agreement and dissolving the marriage.

In September 2023, Mother tendered a notice of relocation to Texas. The next month she requested a modification of timesharing due to her move and because Father was "no longer communicating with [Mother] regarding the minor children or letting [Mother] communicate with the minor children."

In February 2024, relevantly, Mother moved for the family court to hold Father in contempt for failing to abide by the Agreement's terms. In her supporting affidavit, Mother stated Father had not kept her informed about the children, their activities, or caretakers, nor had he permitted the children to communicate or visit with her. Mother requested a modification to timesharing including an increase to one week each month and "a few months each year[.]"

In May 2024, the parties entered an agreed order regarding communication through the Our Family Wizard application. Therein, the parties agreed the children would conduct daily five-minute phone calls at 9:00 p.m. to the other parent. This agreement stated, "If [Father is] unable to *initiate* a call at 9:00 p.m. due to his work schedule, [Father] shall *initiate* the call as soon thereafter as he is available and with the children." (Emphasis added.)

In July 2024, the family court held a hearing wherein Mother, Father, and a counselor for the oldest minor child testified.

Mother testified that she recently remarried and moved to Texas. She acknowledged that at the time she signed the Agreement she knew she would eventually move to Texas but did not know exact timing. She stated she had been going back and forth between Texas and her mother's house in Tennessee. When she signed the Agreement, her plan was to stay at her mother's house when she had her children and after her timesharing window, she would return to Texas. She testified that initially she did not anticipate bringing the children to Texas, but Father's behavior post-divorce had created the need for a new arrangement. She stated that when she signed the Agreement, she believed Father would work with her so she could remain present in the children's lives.

Mother asserted that since her remarriage in October 2023, Father had not been abiding by the Agreement. Mother testified that Father had not communicated with her about the children's schooling, tutors, schedule, doctors, or health insurance coverage. She stated Father enrolled their oldest minor child in counseling without her knowledge or consent. Mother stated she requested vacation time at least 45 days in advance but would not know if she would be allowed to have the children for that trip until the day she arrived in Kentucky. Mother testified that due to her adult son's chemotherapy appointments, she

sometimes needed to rearrange timesharing with her minor children, but Father refused to work with her in making those changes. Mother asserted equal parenting time would be in the best interests of the children because it would allow her to have more consistent, meaningful time with the children and hopefully assist more efficiently with their homeschooling.

In his testimony, Father admitted that he changed his phone number and did not want Mother to have the new number. He admitted that he had discussed that issue in front of the children, and they knew he did not want their mother to have his number. He admitted that he did not always reply to her messages and did not appear to think he was required to respond to her messages pertaining to the children. Father stated that timing played a role in his communication failures as she typically contacted him while he was working, at church, or late at night. He stated that he was attempting to limit communications with Mother due to the stress those interactions caused him.

Father testified that their oldest minor child had anxiety about Mother's visits, was having nightmares, and would return crying. He admitted he did not inform Mother that the oldest minor child was speaking with a counselor. Father testified that he had agreed to take on the marital debt in exchange for having primary care of the children and did not believe a modification was appropriate. Father asserted he would not have signed the Agreement if he had

-5-

known Mother was moving to Texas.  Also, Father asserted that as Mother knew about her relocation prior to signing the Agreement, she should be bound by its terms.

Lastly, the counselor for the oldest minor child testified.  The counselor stated their sessions were mainly related to identifying stress triggers and coping with anxiety, but the child was making progress.  The counselor did not elaborate as to the root of the child's anxiety but stated it increased around Mother's visitations.  The counselor stated she would be able to continue seeing the child via telehealth while in Texas.  The counselor testified she had not spoken with Mother.

At the close of the hearing, the family court stated, "it is clear that [Father] has violated the orders and the spirit of the orders with regard to parenting issues."  The court reminded the parties that allowing meaningful contact with the other parent is a factor in determining timesharing, and particularly important here because Father "is not encouraging a good relationship with the mother."  The court instructed Father to put the children's best interests above his negative feelings for Mother and to support the children's relationship with Mother.

In September 2024, the family court entered an order modifying timesharing ("Modification Order").  The Modification Order gave a nine-page detailed recitation of the parties' testimonies.  For example, the court stated:

[Mother] testified that when she tried to sign into My Family Wizard[,] the application requested that she enter [Father's] phone number, which [Father] would not provide. [Mother] introduced an email to [Father] regarding her inability to use My Family Wizard without knowing his phone number. . . .

[Mother] testified that she was not getting to talk to the kids daily for five minutes, as agreed, but after being able to use My Family Wizard, things were better. However, [Mother] would have to call for 20 to 30 minutes before anyone would answer. [Mother] testified that she told [Father] he was supposed to initiate the phone calls when the minor children were with him. [Mother] testified that [Father] stated he would not initiate the phone calls.

[Mother] testified that she could not get her allotted vacation time with their children despite repeated attempts to arrange the dates with [Father]. [Mother] testified she had notified [Father] of the vacation dates, but [Father] would not respond to confirm the dates. Emails between the parties illustrate [Mother's] attempts to discuss vacation times. . . .

[Father] testified that he had not provided [Mother] with names and contact information regarding who was watching and tutoring the children.

[Father] testified that he did not feel it was his responsibility to force the children to call [Mother]. [Father] testified that his interpretation of initiating the phone call was to give the minor children the phone number to call.

Ultimately, the family court found:

[Father] has not complied with the requirements of joint custody as he has not provided [Mother] with information about the children, their medical providers, their therapy and their schooling. Further, [Father] has not allowed

[Mother] to communicate with the children. Thus far, [Father's] actions, inactions, and conduct have been indicative of attempts towards parental alienation of the children towards their mother and not in the best interests of the children.

The Modification Order referenced a multitude of reasons why a new timesharing agreement was necessary including: Mother's relocation to Texas; Mother's desire to have more time with the children and more opportunity to participate in their schooling; Father's attempts to alienate the children from Mother. Beyond church, the court noted it did not appear the children were involved in activities or had "significant ties" to their Kentucky community; Mother wanted to enroll the children in a homeschooling co-op and one child in dance classes; Mother's home was appropriate and as she no longer worked outside the home, Mother would be able to stay home with the children; and counseling could continue via telehealth.

Additionally, the Modification Order stated the family court's concern about the parties' lack of communication and Mother's long periods between being able to speak with the children. The court contributed one child's anxiety, in part, to the lack of time with Mother, the limited phone communications, and Father's attitude towards Mother. The court stated Father "has not allowed the children frequent, meaningful, and continuing contact with [Mother]. Despite [Father's] actions, [Mother] testified that she believed [Father] was a good father."

The family court found it was in the best interests of the children for a timesharing schedule that maximized time with each parent. Thus, the court continued joint custody but granted Mother's motion to modify timesharing. The Modification Order allowed for the children to alternate months between the parents with exchanges (beginning in 2025) to take place at the halfway point between their two residences. The court directed the parties to communicate timely and to keep the other informed.

Father filed a motion to alter, amend, or vacate the Modification Order pursuant to Kentucky Rule of Civil Procedure ("CR") 59.05. The family court denied Father's motion (but entered an agreed order modifying the month-to-month schedule so Father could receive the months with major religious holidays). Father appealed the Modification Order.[2]

## ANALYSIS

On appeal, Father argues the Edmonson Family Court abused its discretion in modifying the timesharing because (1) the modification was not in the best interests of the children, (2) Mother should be bound by the Agreement as the cause for the modification request (her relocation) was known at the time she entered into that Agreement; (3) the court's order was not supported by substantial

---

[2] An order denying a CR 59.05 motion does not alter the underlying judgment; hence, the appeal is taken from the underlying judgment, not the order denying the CR 59.05. *See Ford v. Ford*, 578 S.W.3d 356, 366 (Ky. App. 2019).

evidence; and (4) the court improperly disregarded the counselor's testimony. Notably, Father failed to cite any caselaw in support of these arguments.

Kentucky Revised Statute ("KRS") 403.320(3) expressly refers to modification of *visitation*. However, the terms "visitation" and "timesharing" are often used interchangeably. *Layman v. Bohanon*, 599 S.W.3d 423, 429 (Ky. 2020); *but see Pennington v. Marcum*, 266 S.W.3d 759, 764-65 (Ky. 2008) (recognizing the overlapping use, but stating "visitation" is not the most accurate legal term for a joint custodian's time with his/her children). Despite this verbiage discrepancy, KRS 403.320(3) allows a court to modify a timesharing arrangement if it finds this to be in the children's best interests, although a court may not restrict timesharing (meaning order less than reasonable timesharing) unless it finds that timesharing would seriously endanger the children. *Pennington*, 266 S.W.3d at 765; *Layman*, 599 S.W.3d at 431.

A visitation/timesharing modification must be left to the sound discretion of the family court. *Pennington*, 266 S.W.3d at 769. We review the timesharing modification for abuse of discretion, though we review its factual findings for clear error and its interpretation and application of statutes *de novo*. *Turner v. Turner*, 672 S.W.3d 43, 50-51 (Ky. App. 2023) (citations omitted). Additionally, "[d]ue regard shall be given to the opportunity of the [family] court

-10-

to judge the credibility of the witnesses." *Layman*, 599 S.W.3d at 431-32 (quoting *Humphrey v. Humphrey*, 326 S.W.3d 460, 463 (Ky. App. 2010)).

On appeal, Father argues that the family court did not give sufficient credence to Mother's "dishonesty" and as Mother knew about her move to Texas prior to signing the Agreement, she should be bound by it. Yet this argument misconstrues this Court's role and the family court's ruling.

We are not factfinders; it is the family court's duty to determine witness credibility and to weigh the evidence. *See Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (citations omitted). The family court specifically stated, "[t]he Court is aware that [Mother] signed the [Agreement] knowing she would be moving, however, she testified credibly that she believed [Father] would work the time-sharing out with her so that she would still see the children since they had agreed to joint custody." That finding is not clearly erroneous. Moreover, the family court did not modify the timesharing solely because of Mother's move to Texas. The family court modified timesharing because Father exhibited an inability to abide by the current Agreement, did not support the children's relationship with Mother, and demonstrated that he did not perceive or treat Mother as an equal parent. Hence, the family court determined a modification was required in order to encourage the children's relationship with both parents. That

modification is not an abuse of discretion because it is reasonable and in the children's best interests.

The family court's timesharing schedule is reasonable. "There is no set formula for determining whether a modified timesharing arrangement is reasonable; rather, it is a matter that must be decided based upon the unique circumstances of each case." *Layman*, 599 S.W.3d at 432 (citation omitted). When parents have joint custody – as Mother and Father here – an individualized determination of reasonable visitation is even more important because "[a] joint custody award envisions shared decision-making and extensive parental involvement in the child's upbringing, and in general serves the child's best interest." *Drury v. Drury*, 32 S.W.3d 521, 524 (Ky. App. 2000) (citing *Squires v. Squires*, 854 S.W.2d 765, 769 (Ky. 1993)).

Here, the modification was necessary in order to nurture shared decision-making and allow for extensive, maximum parental involvement from *both* parents. Clearly, the parties were not able to co-parent effectively under the prior Agreement, and Father did not allow Mother to be consistently, meaningfully involved with the children. The family court's timesharing modification granted equal parenting time, directed the parents to meet in the middle for exchanges, and required the parents to communicate routinely. We agree with the family court that due to the children's lack of community activities in Kentucky and their

-12-

homeschooling education, this non-traditional month-to-month schedule is reasonable. This modification allows for both parents to engage in their children's homeschooling, have equal authority to determine how the children will be raised, and be involved in major decisions concerning the children's upbringing.

Similarly, the family court supported its finding – that equal parenting time was in the children's best interests – with substantial evidence. The court determined that Father alienating Mother from the children was not in the best interests of the children as there was no evidence showing Mother was unfit, unwilling, or unable to parent. The court found that under the prior Agreement, Father perceived his parenting role as superior to Mother's despite the family court awarding joint custody. The court noted that Mother was not receiving phone calls from the kids, consistent communication from Father, or information about the children's lives, tutors, babysitters, health, or schooling.

The family court noted that Mother was no longer working outside the home and was able and willing to assist the children with their homeschooling. The court stated that Mother had a plan to engage the children in a homeschooling co-op in Texas and to support the children's other interests.

The family court noted the counselor's testimony that the oldest minor child had anxiety regarding Mother's visits, but the court considered her testimony *together* with other testimony. Given Father's clear hostility with Mother, the

family court did not take a great leap in determining that Father's behavior could have exacerbated the child's anxiety and this new timesharing arrangement could help reestablish that relationship with Mother and quell the child's anxiety. Mother agreed to continue the child's counseling via telehealth.

The Modification Order allows for Mother and Father to spend equal time with the children on equal footing. The family court determined a modification was necessary in order to nurture the children's relationship with both parents. We agree with the family court that the modification was in the best interests of the children.

## CONCLUSION

Having carefully reviewed the record, we discern no abuse of discretion, misapplication of the law, or clearly erroneous factual findings. Accordingly, we AFFIRM the Edmonson Family Court.

ALL CONCUR.

BRIEF FOR APPELLANT:

Pamela C. Bratcher
Bowling Green, Kentucky

BRIEF FOR APPELLEE:

Ashlea Shepherd Porter
Bowling Green, Kentucky